## THE WILLIAM E. REED.

## HUDSON RIVER SHIPYARDS CORPORATION v. METROPOLITAN SAND & GRAVEL CORPORATION.
### No. 224.

Circuit Court of Appeals, Second Circuit.
May 8, 1939.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Stanley R. Wright, both of New York City, of counsel), for claimant-appellant.

Lynch & Hagen, of New York City (Henry C. Eidenbach and Charles W. Hagen, both of New York City, of counsel), for libellant-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On April 6, 1936, the libellant's deck-scow A. H. F. Seeger, loaded with a cargo of crushed stone, was in tow of the claimant's tug William E. Reed, bound from a stakeboat off Rikers Island to Colonial Sand & Stone Company's dock on Eastchester Creek. The wind was strong south and the tide flood. While the tug and scow were approaching Pelham Highway Bridge, an air control spring in the tug's steering gear broke with the result that she lost control of the Seeger and it was carried upon rocks at the starboard edge of the channel. The spring broke because of a flaw not discovered or discoverable through the weekly visual inspections made by the master of the Reed.

Judge Coxe before whom the cause was tried found that the only inspection of the spring consisted of a weekly visual inspection which would not disclose the flaw; that there was no evidence of shipyard inspection of the steering gear or of the spring at any time; that there was no evidence as to the condition of the spring immediately prior to the accident and that the stranding was caused by the failure of the steering gear and the strong wind and tide. He found, as a conclusion of law, that the defense of inevitable accident was not sustained.

The flaw in the spring which resulted in the break is known as a "slag inclusion" in the metal of the spring which might have been ascertained in advance of its use by taking an X-ray of it or by examining its entire length through a microscope to determine whether the defective place was opening up. But such tests of the machinery of a tug are not customarily made by its owners and are not supposed to be made. On the other hand, the owner should be expected to purchase its machinery from a manufacturer of repute and to have some information about how old it was and how much it had been used when purchased. In the present case the claimant had installed the spring in the tug about three years before it broke. For aught that appears it may have been a second-hand spring bought of a junk dealer, with no knowledge on the part of the buyer about how long, or in what circumstances, it had been used. It is true that there was proof that it was made of a good quality of steel and that no visual inspection would have detected the flaw. But it is common knowledge that the breaking of machinery, as a result of which damage occurs, is not normal to the operation of a tug. In such a case there ordinarily is fault on the part of the owner in operating a vessel that is not seaworthy and the law casts upon him the burden of showing not only what happened but what was done and what would have been necessary to avert the casualty. The Reichert Line, 2 Cir., 64 F.2d 13; Cranberry Creek Coal Co. v. Red Star Towing & Transportation Co., 2 Cir., 33 F.2d 272; In re Reichert Towing Line, 2 Cir., 251 F. 214, 217. Here the owner showed that the "slag inclusion" or flaw caused the spring (though in general composed of good material and of proper design) to break. Thereby the tug became so impaired in efficiency that, in spite of possessing powerful engines, it was unable to prevent its tow from being stranded through the forces of the wind and tide.

The claimant failed to show the history of the spring or to prove that pains had been taken to secure it from a reputable manufacturer, who was accustomed to furnish a thoroughly sound article and to have proper tests made to determine that the equipment it sold had no hidden defects. Accordingly the claimant did not sustain the burden of proof that the law imposes.

There was evidence that the stranding occurred before the spring broke and that the flaw had therefore no relation to libellant's injuries, but the findings of the trial court were to the contrary. Those findings were supported by evidence and we see no reason to differ with them.

Decree affirmed.