**PORTO RICO LIGHTERAGE COMPANY, Petitioner, Appellant,**

v.

**CAPITOL CONSTRUCTION COMPANY, Inc., et al., Claimants, Appellees.**

No. 5759.

United States Court of Appeals
First Circuit.

March 7, 1961.

Vicente M. Ydrach, with whom Hartzell, Fernandez & Novas, San Juan, P. R., was on brief, for appellant.

Wallace Gonzalez Oliver, New York City, with whom Edward M. Borges, San Juan, P. R., McConnell, Valdes & Kelley, San Juan, P. R., and Bigham, Englar, Jones & Houston, New York City, were on brief, for appellees.

Before MARIS,* HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a petition to limit liability and for a declaration of nonliability brought by the owners of the tug Eureka in the United States District Court for the District of Puerto Rico. Claimants are parties having interests in a tow. The court denied the petition, and made a finding of fault. Prior to the assessment of damages petitioner has appealed.

In August, 1956 petitioner recovered the (later-named) M/V Eureka from the bottom and repaired her, converting her from a deep-water fisherman to a tug. It is undisputed that the vessel was of a proper type for towage duty. The present questions relate to her clutch. The clutch was old, and was not initially overhauled. On September 21, 1956, the

16. See footnote 5.

* By assignment.

clutch failed, slipping so seriously that it became red hot and emitted sparks. The slipping was found to be due to excessive wear of the asbestos covering the discs. The resulting heat destroyed the tension of certain internal springs. One Potts, vice-president and general manager of petitioner, thereupon instructed petitioner's superintendent, one Rodriguez, to make repairs. Parts were not available from the manufacturer, and Rodriguez testified that because the original springs were destroyed he could not tell whether the new ones he installed were of the proper tension. Accordingly, at first he was not "one hundred per cent" certain that the clutch was all right. However, after extensive tests he became satisfied. The following month petitioner contracted with claimant Capitol Construction Company to tow its barge YCN–703 with loads of gravel from Puerto Rico to St. Thomas, Virgin Islands, a distance of some 45 miles. On November 15 ten to twelve trips had been completed, during all of which time the clutch performed properly. On that day it suddenly threw bolts from the cover and crossbearing, and apparently jammed, so that the engine could not be run. As a result the barge eventually grounded on a reef and was severely damaged, and the gravel was lost.[1]

The court found, (1) That the clutch had not been overhauled in August. This may well be true, but it is immaterial. (2) That the clutch was not properly repaired after the September breakdown— a matter we will deal with shortly. (3) That the electrical system "had had difficulties." This, also, may be so, but it is not clear what the difficulties were, and, as the court remarked during the trial, they had no relation to the accident. (4)

That the auxiliary electrical equipment was inadequate. The main generator failed because it was connected to the engine, in other words, because of the clutch trouble. The only evidence as to the auxiliary was that the rough sea caused dirt to clog the filter. The court did not find that the clogging was the result of negligence, or that the officers of petitioner had privity or knowledge.

■ The court found that Potts knew that the clutch was defective, and that he was negligent in failing to take adequate steps for its repair, so that the petitioner was liable and in no position to limit. Since this defect related to the vessel's seaworthiness, as to which petitioner had an affirmative duty, we will assume the court correctly equated Potts' (and petitioner's) knowledge with that of Rodriguez, petitioner's superintendent charged with making the repairs. See States S.S. Co. v. United States, 9 Cir., 1958, 259 F.2d 458, certiorari denied 358 U.S. 933, 79 S.Ct. 316, 3 L.Ed.2d 305. A fortiori, petitioner is not entitled to exoneration if Rodriguez was lacking in diligence. But we find no affirmative basis for criticism of Rodriguez. Rodriguez was a mechanic fully qualified in such matters. He was initially called as a witness by claimants. He testified that Potts instructed him to repair the clutch, that he did so, that he performed extensive tests, and that the clutch, in his opinion, was satisfactorily repaired. No one testified to the contrary. The mere fact that the springs were not replaced by those of the original manufacturer when none were available does not mean negligence. Nor does counsel's characterization of the new springs as "make-shift" and "piano-springs" overcome evidence of an expert that after testing they were found appro-

[1]. The court did not find that there was any negligence subsequent to the breakdown, but simply that the tug "refused" to anchor immediately, and that when it did anchor the anchors dragged. It is not always good seamanship to anchor on the high seas in deep water, particularly when, as in the present case, the anchors must be raised by hand because of loss of power. Although the master testified why he did not anchor at first, the evidence is sketchy, at best, and warrants no finding that what he did was proper or improper. Seamanship is a matter normally calling for expert testimony, and not advocacy, or wisdom after the event. Of course, if in fact there was negligence in this respect, it would not affect limitation, but only exoneration.

priate. Claimants argue that the clutch failed after only two months of operation, and consequently that the repairs must have been poor. Even if this argument might be warranted in some instances, there was no indication that improper springs caused the clutch to fail the second time. The witnesses were uniform in stating that they did not know why the second failure occurred. On the face of things, this breakdown differed materially from the first. Under these circumstances, if we were to speculate at all, we could not agree with claimants' speculations. The evidence shows that the purpose of the springs was to keep the correct tension on the discs. If the springs were too strong, or too weak, the clutch presumably would grab, or would slip, depending upon the defect. Neither of these symptoms appeared. Accordingly, neither the testimony nor our own deductions, if we may properly make any, indicate a defect in the springs.

There was evidence that bolts and nuts connected with the engine and related equipment have a tendency to loosen, and that on the Eureka they were frequently inspected and tightened where necessary. The court did not indicate whether it believed this latter testimony or not. Nor did it find whether, if there had not been proper maintenance in this respect, petitioner had privity or knowledge.

It has been said that it is the obligation of the owner of the tug to the tow to furnish a seaworthy vessel. More accurately, the duty is to use due diligence in this respect. The William E. Reed, 2 Cir., 1939, 104 F.2d 167; see The T. J. Hooper, 2 Cir. 1932, 60 F.2d 737, 738, certiorari denied Eastern Transport Co. v. Northern Barge Corp., 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571; cf. Eastern S.S. Corp. v. Great Lakes Dredge & Dock Co., 1 Cir., 1919, 256 F. 497, certiorari dismissed 250 U.S. 676, 40 S.Ct. 8, 63 L.Ed. 1202. The tug is not an insurer. The initial burden, however, is upon petitioner to show due care, at least to the extent of going forward with evidence.

The William E. Reed, supra; see Cranberry Creek Coal Co. v. Red Star Towing & Transp. Co., 2 Cir., 1929, 33 F.2d 272, 274, certiorari denied New York Marine Co. v. Cranberry Creek Coal Co., 280 U.S. 596, 50 S.Ct. 67, 74 L.Ed. 643; cf. Commercial Molasses Corp. v. New York Tank Barge Corp., 1941, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89. A review of the record convinces us that the district court, rather than finding against petitioner for failure to satisfy this burden, affirmatively found negligence for improper reasons. With respect to the clutch, the area where the court expressly found negligence, petitioner put in a prima facie case. We think that justice would best be served by remanding the action for a new trial on all issues, or, at least, further consideration, at the option of the court, in the light of this opinion.

Judgment will be entered vacating the judgment of the district court and remanding the action for further proceedings consistent herewith.