**OAKDENE COMPRESS AND WARE-HOUSE COMPANY, Plaintiff,**

v.

**S/S CITIES SERVICE NORFOLK, Her Engines, Boilers, Tackle, etc., Respondent.**

**No. 1193.**

United States District Court E. D. South Carolina, Charleston Division.

May 29, 1965.

A. Baron Holmes, III, Hagood, Rivers & Young, Charleston, S. C., for plaintiff.

B. A. Moore, Jr., Moore, Mouzon & McGee, Charleston, S. C., for defendant.

SIMONS, District Judge.

This case arises out of the striking and damaging of libellant's wharf on the Cooper River near Charleston, South Carolina, on October 19, 1963, by the tanker S/S CITIES SERVICE NORFOLK which was attempting to dock at a nearby oil wharf. The ship was being assisted by tugs supplied by White Stack Towing Corporation and the docking operation was being directed by a docking master employed by the towing corporation. The libel demanded the cost of repairs to the wharf, together with interest and costs. In the answer respondent interposed a general denial and alleged that the liability if any was on White Stack Towing Corporation as an independent contractor. When the case came on for trial, the parties submitted the issues to the Court without testimony upon the following agreed stipulation:

"It is stipulated by the proctors for the parties as follows:

"1. That the Respondent is responsible to the libellant for negligent damage to libellant's property.

"2. That, prior to the collision, the pilings and timbers depreciated to the extent of Forty [40%] per cent.

"3. That Libellant is entitled to temporary repairs in the sum of Two Hundred Seventy Five [$275.00] Dollars.

"4. That Libellant is entitled to the sum of Four Hundred [$400.00] Dollars damages to the fender piles, which had been put in place a few weeks before the collision, without any depreciation on the same.

"5. That the cost of repairing the damage to the decking, supporting timbers and supporting piles of the apron of the dock, labor and material, was the sum of Eleven Thousand Three Hundred [$11,300.00] Dollars.

"6. That of the above sum of Eleven Thousand Three Hundred [$11,-300.00] Dollars, the sum of Three Thousand Six Hundred [$3,600.00] Dollars was for the material used in repairing the dock, and the balance of said sum, Seven Thousand Seven Hundred [$7,700.00] Dollars, was for labor and the moving and use of floating equipment necessary to make repairs to the dock.

"7. That, had used or depreciated piles and timbers and docking been used in repairing the dock, the labor costs, costs of the moving of the floating equipment and use of same in repairing the dock, would have been the same as the cost incurred in replacing the dock with some salvage material and new material.

"8. That Oakdene Compress & Warehouse Company paid the sum of Two Hundred Seventy Five [$275.00] Dollars to The Cape Romain Contractors, Inc., contractors, on July 9th, 1964, and the sum of Eleven Thousand Three Hundred [$11,300.00] Dollars on January 31st, 1964."

The sole issue before the court is the proper measure of damages to which libellant is entitled. Libellant contends that it should recover the full cost of repairing the wharf without any deduction for depreciation, but that if there should be an allowance for depreciation it should be applied against the cost of new materials only, and not against labor and similar construction costs. Respondent contends that the wharf being 40% depreciated at the time of the accident, it is chargeable with only 60% of the entire repair costs, including both labor and materials.

Libellant bases its claim that no depreciation should be allowed upon the theory that the Act of June 19, 1948 [46 U.S.C.A. § 740] extending the admiralty and maritime jurisdiction of the United States to "all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land" extends to cases of injury to a wharf the rule

applied in admiralty as to the measure of damages for injury to a vessel, namely that the owner of a vessel damaged by the negligence of another is entitled to recover the full cost of repairs even though repairs have enhanced the value of the vessel. I know of no case holding that the Act enlarging the admiralty jurisdiction to include injury to a land-based structure has altered the established rule as to damages recoverable for such injury, and I am of the opinion that the Act of 1948 has worked no change in the measure of damages applicable in the case now before us. As a matter of fact, the rule applied in admiralty to ship damage is not, to my mind, substantially different from the rule applied to wharf damage both before and after the Act of 1948, so far as allowance for depreciation is concerned.

■ The rule is thus stated in Shepard Steamship Company v. United States, 111 F.2d 110, 113 [2nd Cir. 1940]:

"[W]e must apply the established rule as to damages. Generally speaking it is restitutio in integrum. Standard Oil Company [of New Jersey] v. Southern Pacific Company, 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890. But where repairs are made which require the installation of new parts in a vessel to restore her to the condition in which she was before a collision for which another is responsible, the party liable cannot be given credit for the difference between the value of the ship necessarily so repaired and what its value would have been had the old, but still good parts, which the collision made unsuitable for continued use, been undamaged. The Baltimore, 8 Wall. 377, 19 L.Ed. 463; Navigazione Libera T.S.A. v. Newton Creek Towing Company, 2 Cir., 98 F.2d 694. However much might be said logically to the contrary, the law of damages as applied below is now to be taken as established in a situation like the collision here involved. It is not to be confused with any special usage in insurance cases or with situations *where the part replaced was not in good condition at the time of the accident.*" [Emphasis added].

In a number of cases courts have refused to allow the entire cost of repairs to a vessel damaged in collision, where parts replaced were not in good condition at the time of the accident. In Exner Sand & Gravel Corporation v. Maher Stevedoring Corporation, 1955 A.M.C. 2286 [D.C.N.J.] the court awarded only two-thirds of the full cost of repairs to a barge, saying:

"We are of the opinion * * * that it would be inequitable to assess the full cost of repairs against the respondent. At the time of the occurrence the *Florence E.* was admittedly twenty-six years old and had been in service many years. This is a factor which should be taken into consideration in the assessment of damages."

Also in Anthony O'Boyle, Inc. v. Tug Cleveland, 1959 A.M.C. 1172, [E.D.N.Y.] where it appeared that a barge damaged by the respondent was old and needed recaulking, the court made a 25% deduction from the full cost of repairing the damage.

Likewise in Atkins v. Alabama Drydock and Shipbuilding Company, 195 F.Supp. 944, 949 [D.C.Ala.], a case of damage to a wooden vessel, the court said:

"It violates reason to find that a responsible party should be obligated to replace in a new condition that which was deteriorated prior to the time he became responsible."

■ It thus appears that even if the general admiralty rule of damages were applicable in the present case, respondent would still be entitled to a reduction of its liability in view of the admitted deterioration of the wharf at the time of the collision. At any rate, the courts have generally allowed depreciation in cases of damages to wharves and similar structures, and this practice has con-

tinued since the passage of the Act of 1948 bringing such cases within the admiralty jurisdiction.

Thus, in General American Transportation Corporation v. Tug Patricia Chotin, 120 F.Supp. 246 [D.C.La.], the court said: "Since the life expectancy of a pile cluster is twenty years and since the 7 pile cluster was five years old at the time of the collision, libellant is entitled to three-fourths of its replacement cost;" and in Jemison v. Dredge Duplex, 163 F.Supp. 947 [D.C.Ala.], where the cost of repairing a wharf was $3,000.00, the court, having found that there had been a 50% depreciation, awarded only $1500.00 damages. In Patterson Terminals, Inc. v. SS Johannes Frans, 209 F.Supp. 705 [D.C.Pa.], the court said:

"In this case, the dolphin had a 25 year life expectancy when it was built in 1946. Therefore, in October 1958, it had depreciated to approximately 50% of its value. * * * The cost of repairs * * * will be reduced by 50% for previous deterioration and damage."

■ Apparently, in all the above cases the percentage of depreciation was applied to the entire cost of repairs and in my opinion it would be distinctly unjust to respondent here to limit depreciation to material cost alone. The wharf was repaired with new and sound material so that the repaired portion of the structure had its useful life extended as a result. This extension of life expectancy was purchased at a certain cost for materials and a certain cost for labor. Libellant is entitled to be restored as nearly as possible to its position preceding the accident, but no more. Its position has actually been improved and respondent is entitled to credit for such improvement.

In accordance with the foregoing the court is of the opinion:

■ That libellant should have judgment for Two Hundred Seventy Five [$275.00] Dollars for temporary repairs and Four Hundred [$400.00] Dollars for damage to fender piling, without deduction for depreciation, with interest at 6% on Two Hundred Seventy Five [$275.00] Dollars from July 9, 1964, and interest at 6% on Four Hundred [$400.00] Dollars from January 31, 1964;

■ That as to other repairs totaling Eleven Thousand Three Hundred [$11,300.00] Dollars libellant's recovery must be reduced in proportion to prior depreciation of the repaired portions of the structure, stipulated to be 40%, such depreciation allowance to apply to the entire cost of repairs, without distinction between cost of materials and cost of labor; that as to these repairs libellant should have judgment against respondent for 60% of Eleven Thousand, Three Hundred [$11,300.00] Dollars, or Six Thousand Seven Hundred Eighty [$6,780.00] Dollars, with interest at 6% from January 31, 1964.

And it is so ordered.