SAMINCORP, South American Minerals and Merchandise Corporation, Libellant,

v.

S.S. RIVADELUNA, her engines, boilers, etc., and Angel Riva Suardiaz, her owner, Claimant-Respondent.

No. 1799.

United States District Court
D. Delaware.

Dec. 29, 1967.

See also D.C., 276 F.Supp. 251.

Edmund D. Lyons, of Morris, James, Hitchens & Williams, Wilmington, Del., and John W. R. Zisgen, of Bigham, Englar, Jones & Houston, New York City, for libellant.

Ernest S. Wilson, Jr., of Wilson & Lynam, Wilmington, Del., and Raul Betancourt, Jr., and Richard W. Palmer, of Rawle & Henderson, Philadelphia, Pa., for claimant-respondent.

## OPINION

STEEL, District Judge.

This Court has found that respondent Rivadeluna damaged libellant in the

amount of $43,260.37, exclusive of interest. Libellant claims that the judgment should include interest at 6% from October 15, 1959, the date the vessel with its damaged cargo arrived in Wilmington, until the entry of the judgment.

The award of interest is discretionary, regardless of whether unliquidated contract or tort damages are involved. Gardner v. The Calvert, 253 F.2d 395, 402 (3rd Cir.), cert. denied, Sound S.S. Lines Inc. v. Gardner, 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958). One of the factors to be considered in awarding interest is delay in bringing the suit or in concluding it. O'Donnell Transp. Co. v. City of New York, 215 F.2d 92 (2nd Cir. 1954). The present libel was filed immediately after the cargo was observed to be contaminated. Each party concedes that the delay of 7½ years in bringing the case to trial was not the fault of his opponent, and that delays in receiving transcripts of depositions taken in Spain prevented the trial much earlier.

An award of interest is made so that a person wrongfully deprived of the use of the money should be made whole for his loss. Miller v. Robertson, 266 U.S. 243, 257–258, 45 S.Ct. 73, 69 L.Ed. 265 (1924). Respondent argues that libellant was not deprived of the use of any money after April 1960. By that time libellant had received two checks totalling $136,000 from its underwriter, and had been accorded by its underwriter the right to retain the damaged cargo at an agreed upon value of $12.50 per ton. These checks plus the cargo constituted reimbursement of $195,601.46 which libellant received from its underwriter.

The exact nature of the transaction between the libellant and its underwriter is in dispute. Respondent claims that when libellant's underwriter paid libellant the $195,601.46 in cash and in kind, the underwriter retained no right to be subrogated to any recovery which libellant might obtain against respondent. Libellant makes a contrary contention. On the face of the matter it is not reasonable to suppose that the underwriter would voluntarily give up so valuable a right as that of subrogation. The general rule is that when a marine insurer pays a loss under a valid policy he becomes by operation of law subrogated to all the rights of the insured with regard to that loss. Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 462, 9 S.Ct. 469, 32 L.Ed. 788 (1889).

The facts support rather than negate the view that the underwriter intended to retain the right of subrogation. On October 29, 1959 Shepard of libellant wrote the underwriter claiming damages of $198,515.66. Shepard concluded his letter:

"We on our part will cooperate fully with you under action [sic] commenced by your counsel in Wilmington against the underwriters of the SS Rivadeluna."

Shepard testified that no other documents exist beside his letter and the checks he received concerning this transaction. 2 Shepard Dep. 6, 16. Shepard believed that once libellant made its claim against the underwriter that it no longer could sell the fluorspar because it had given up its interest in it. 2 Shepard Dep. 8, 9. It is reasonable to infer that Shepard believed that libellant gave up all its rights against respondent when it settled with its underwriter, except such as it might assert on behalf of its underwriter who, when it paid libellant, became subrogated to libellant's rights. There is no evidence that the arrangement between libellant and its underwriter was a complete settlement without subrogation. Any interest which respondent is required to pay to libellant will therefore be for the account of its underwriter as subrogee.[1] The fact that

1. Respondent did not contend that a defect in parties existed because libellant was not the real party in interest and its underwriter had not been joined. Had such a contention been made, the underwriter could have acted under Fed.R.Civ.P. 17(a) to protect its interest.

libellant did not lose the use of its damage money is irrelevant. Its underwriter did.

Respondent also argues as an additional reason for denying interest that the claim made by libellant was exaggerated. Its libel claimed $200,000. Later, in its pre-trial order libellant claimed $128,264.97 and finally in its brief after trial, $118,860.94. The main case cited by respondent for denial of interest because of exaggeration, Patterson Terminals Inc. v. S.S. Johannes Frans, 209 F. Supp. 705, 711 (E.D.Pa.1962), is not applicable here. There the Court refused interest where libellant originally sought damages to his vessel which would have put the vessel in better condition after the repairs than it was in before the collision. Here libellant never claimed more than its actual loss. The claim which libellant originally made for $200,000 was not made in bad faith. Its settlement with its underwriter totalled nearly that amount.

Other arguments made by respondent have been considered and found to be without merit.

It is a general rule that in admiralty interest is added to damages recovered by one as a result of the tort of another in the absence of exceptional circumstances. O'Donnell Transp. Co. v. New York, supra, 215 F.2d at 95. Here no exceptional circumstances exist to curtail the operation of this general rule.

In awarding interest a court sitting in admiralty is not required, when the allowance of interest is justified, to fix it at a legal rate allowed in the state where it sits. Gardner v. The Calvert, supra, 253 F.2d at 402.[2] In light of the fact that interest rates on high grade bonds and savings accounts were substantially lower during many years when the litigation was pending than they are at the present time, interest at the rate of 4% will be allowed as equitable.

---

2. The legal rate of interest in Delaware is 6%. 6 Del.C. § 2301(a).