**SABINE TOWING AND TRANSPORTATION CO., Inc., a corporation, Plaintiff,**

v.

**ST. JOE PAPER COMPANY, a corporation, Defendant and Third-Party Plaintiff,**

v.

**Denys MANSON and Dave Maddox, Third-Party Defendants.**

**No. 724.**

United States District Court
N. D. Florida,
Marianna Division.

Nov. 15, 1968.

Thomas R. Ellinor, Panama City, Fla., for plaintiff and third-party defendant, Denys Manson.

Lynn C. Higby, of Isler, Welch, Bryant, Smith & Higby, Panama City, Fla., for defendant and third-party plaintiff.

## MEMORANDUM DECISION

CARSWELL, Chief Judge.

This admiralty cause is before the the Court on the Motion for Summary Judgment of the Defendant, St. Joe Paper Company, with respect to its liability for damages to the Plaintiff's ship, S/S Colorado.

The Plaintiff's Complaint sounds in negligence and paraphrased, alleges that on January 30, 1967, the Defendant owned docks in Port St. Joe, Florida, at which the Plaintiff's ship, the S/S Colorado, was moored port side to. That on said date the Plaintiff's ship was damaged by two eyebolts which protruded from the Defendant's dock and which were used to support rubber fenders. The Complaint further alleges that the Defendant knew of the dangerous condition i. e. the two eyebolts, and negligently failed to warn the Plaintiff of the dangerous condition, thereby allowing the Plaintiff's vessel to contact the Defendant's dock while attempting to depart from the dock.

The material facts adduced in the depositions of the ship's Master and the Pilot reveal that the incident occurred in the early morning hours of January 30, 1967, at which time no significant weather or sea conditions existed. The S/S Colorado is a standard T-2 tanker 525 feet long with a gross tonnage of 10,446 and a bunker fuel capacity of 109 thousand barrels. At the time of the casualty the S/S Colorado was under charter to an oil company and had just completed the delivery of several thousand barrels of bunker C fuel oil to the Defendant.

Upon the arrival of the S/S Colorado at the bar at Port St. Joe, Florida, the Master, one Denys Manson, had employed a pilot, one Dave Maddox, for the purpose of bringing the S/S Colorado into the Defendant's dock, docking the vessel as well as to thereafter undock the vessel and return her to the bar.

At the time of docking, on January 29, 1967, Maddox ordered one shot or shackle of anchor chain (90 feet) in the water although he did not know whether this command was obeyed. At the time of the undocking of the S/S Colorado the stern and midship lines had been released and the stern was swinging out from the pier with the bow being held closely to the pier by a bow line and a breast line. The ship's engines were running and working the stern of the ship out with the rudder to the left. The First Mate was instructed to commence heaving on the starboard anchor which had the effect of pulling the bow of the ship away from the dock. This, in turn, caused the bow line and the breast line to begin stretching and when the Pilot realized that the lines were stretching more than normal, he became concerned and cut the ship's engines. The Mate continued to heave on the anchor and when the anchor came loose from the bottom the tightly stretched lines "snatched the ship back upside the dock". When the ship struck the side of the dock two metal eyebolts or hangers punched two holes in the side of the Plaintiff's ship. The metal eyebolts are located on top of the dock; are used for suspending six foot cylindrical rubber fenders and protrude out from the top of the dock approximately four and one-half inches. The Pilot had expected that during the undocking maneuver that the anchor would come loose from the bottom sooner than it did. His only explanation concerning the time that the anchor came loose from the bottom was that there was either more anchor chain put out than he had ordered or the anchor had become stuck on the bottom. At the time when the engines were cut the bow of the ship was approximately eight feet from the pier and thereafter moved away two, three or four feet. No command was given to cease heaving on the anchor although there was time for such an order.

The Pilot, Maddox, was well aware of the condition of the dock as well as the location and existence of the metal eyebolts or hangers having been piloting ships out of Port St. Joe since 1948. Likewise, the Pilot acknowledged that a high degree of care was necessary when maneuvering around the dock since, to his knowledge and in 1963, another vessel had suffered the same or similar damage by reason of the eyebolts or hangers. He knew of no other similar incidents where the hull of a vessel was punctured, however, he knew of many instances where the sides of ships were scraped by the eyebolts.

The deposition of Captain Denys Manson reveals that he, too, knew of the existence of the eyebolts or hangers prior to the accident, had personally inspected the eyebolts and had been advised by Maddox that the eyebolts constituted a hazard.

Likewise, the Master acknowledged that any additional warnings or advices from any official of the Defendant relative to the existence of the eyebolts would have been of little benefit to him. At the time of the incident complained of Manson was on the bridge of the S/S Colorado seeing that the Pilot's instructions were carried out. Both Manson and Maddox were eminently familiar with the physical characteristics and maneuverability of the S/S Colorado and similar vessels.

██ At the time of the incident the Pilot was operating the S/S Colorado as a non-compulsory pilot, as opposed to a compulsory pilot. The distinction between the two types of pilotage is that the conduct, knowledge, etc. of a non-compulsory pilot is imputable to the owners of the vessel whereby the conduct of a compulsory pilot is not so imputable. See Benedict on Admiralty, Vol. 1, page 361–362 and Jure v. United Fruit, 6 F.2d 6 (5th Cir. 1925).

██ In its current posture, then, the case basically involves a maneuverable, mobile vessel colliding with and striking a stationary dock. Under these circumstances the law appears to be well settled as found in the case of Patterson Terminals, Inc. v. S/S Johannes Frans,

209 F.Supp. 705 (D.C.La.1962), at page 707:

> "[1, 2] When a moving vessel strikes a stationary object, such as a wharf, an inference of negligence arises and the owners of the vessel then have the burden to rebut the inference. General Petroleum Corp. v. City of Los Angeles [Hakonesan Maru], 42 Cal. App.2d 591, 109 P.2d 754, 1941 A.M.C. 510, 513 (1941). In admiralty, this presumption does more than merely require the ship to go forward and produce some evidence on the presumptive matter. The moving vessel must show that it was without fault or that the collision was occasioned by fault of the stationary object or was the result of inevitable accident. Carr v. Hermosa Amusement Corporation, Limited, 137 F.2d 983, 985 (9th Cir. 1943).

As Senior Judge Kirkpatrick stated in Patterson Oil Terminals v. The Port Covington, 109 F.Supp. 953 (E.D.Pa. 1952), at page 954:

> 'The common sense behind the rule makes the burden a heavy one. Such accidents simply do not occur in the ordinary course of things unless the vessel has been mismanaged in some way. It is not sufficient for the respondent to produce witnesses who testify that as soon as the danger became apparent everything possible was done to avoid an accident. The question remains, How then did the collision occur? The answer must be either that, in spite of the testimony of the witnesses, what was done was too little or too late or, if not, then the vessel was at fault for being in a position in which an unavoidable collision would occur.
>
> 'The only escape from the logic of the rule and the only way in which the respondent can meet the burden is by proof of the intervention of some occurrence which could not have been foreseen or guarded against by the ordinary exertion of human skill and prudence—not necessarily an act of God, but at least an unforeseeable and uncontrollable event.' "

Likewise, this Court has also recognized the foregoing rule in State Road Dept. of Fla. v. Gulf States Marine & M. Co., 168 F.Supp. 242, at page 244 (D.C.Fla.1958) affirmed 269 F.2d 83 (5th Cir. 1959) wherein it is stated:

> " * * * in State Road Department of Florida v. United States, D.C.N.D. Fla.1949, 85 F.Supp. 489, 500, affirmed 5 Cir., 189 F.2d 591, certiorari denied 342 U.S. 903, 72 S.Ct. 291, 96 L.Ed. 676, it was held:
>
> 'The fact that one hits and damages an immovable object with a movable one demands that the operator of the movable object be required to exculpate himself. The bridge did not hit the ships and the doctrine of res ipsa loquitur is applicable in this case and will serve to supply an inference of the lack of due care in the absence of explanation by defendant.'

 The defendant here has not exculpated itself upon the evidence. The duty imposed upon a vessel approaching a bridge requires that:

> 'A vessel must approach a bridge with reasonable skill and care to avoid injuring it, having in view the difficulties and perils including those caused by the bridge itself.' 80 C.J.S. Shipping § 77d, p. 805; see also The Marguerite W., D.C.E.D. Wis.1943, 49 F.Supp. 929, affirmed 7 Cir., 140 F.2d 491.' "

██ Thus, the Plaintiff here commences this litigation by being presumed to be negligent in the handling of its vessel. The duty imposed upon a vessel approaching a wharf or pier is certainly no different than the duty imposed upon a vessel which is approaching a bridge as noted above. The presumption of negligence against the Plaintiff, however, is not the essential reason that the Court here finds no liability to the Plaintiff on behalf of the Defendant. Had the Plaintiff's injury in this case been caused by a hidden or latent defect or a defect

which was unknown to the Plaintiff, the situation would be drastically different.

Here, however, there is no doubt or dispute that both the Pilot and the Master of the S/S Colorado not only had *actual knowledge* of the peril or danger complained of, but *appreciated* the hazard. Likewise, they and they alone had eminent familiarity with and exclusive control over the operation and maneuverability of the S/S Colorado.

Whether in admiralty or under the common law the bedrock of liability for negligence is *knowledge*. This rule of law is well stated in 23 Fla.Jur. Negligence § 74 at page 315:

" * * * Since knowledge of the parties is the test of liability, the question of liability may be resolved in a negligence action as one of comparative knowledge, the knowledge of the defendant as against the knowledge of the person injured. In other words, liability is established when it is shown that the peril, being of the defendant's creation, was known to the defendant but not to the person injured; *but no liability is predicable of the injury where it appears that the injured person's knowledge of the danger surpassed or equaled that of the defendant.*" (Emphasis supplied)

The proposition is stated a little differently in 23 Fla.Jur. Negligence § 46 at page 291 as follows:

"There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the occupant."

The actual knowledge of the hazard complained of in this case is somewhat analogous, factually, to the case of General Construction Co. v. Isthmian Lines, Inc., 259 F.Supp. 336, D.C.Or. (1966) which involved a suit by a construction company for damage to a pile fender corner which was under construction by the libelant and which was known to be under construction by the respondent ship owners. The Court in finding for the libelants and against the vessel owners states at page 338:

"[4] Respondents urge that the Port of Astoria had an obligation to warn a ship of any unexpected hazard or deficiency, Mendomsley v. Elizabeth River Terminals, Inc., 354 F.2d 476 (4th Cir. 1966) and that libelant is burdened with the same responsibility. They argue that a warning to the Pilots Association in Astoria that the fender was fragile and should not be leaned against, could well have prevented the collision. The argument would be sound if it was not for the fact that each of the vessels made an effort to avoid contact with the corner, the KOKUSAI MARU by maneuvering and the STEELMAKER by the use of a single tug against the ebb tide, and the further fact that the pilot of each of the vessels was fully aware of the fact that the corner was under construction. What more would have been added by the giving of a formal notice to the Pilots Association? The general concept of a formal notice which seemed to originate in Smith v. Burnett, 173 U.S. 430, 19 S.Ct. 442, 43 L. Ed. 756 (1899) is not applied where the alleged obstruction or condition is open and obvious to those in charge of the vessel's management. Here, the absence of constructive notice, must give way to the finding of actual knowledge. In addition to actual notice, each of the vessels was under the control of a pilot whose expertise gave to him a special knowledge and familiarity with local conditions."

For the purposes of the Defendant's Motion for Summary Judgment the Court is assuming that the Defendant had knowledge of the existence, location, and dangerous propensities of the eye-bolts on its dock. Nonetheless, where the Plaintiff has knowledge of the hazard complained of which, as here, was equal to or greater than the knowledge on the part of the Defendant, the Plaintiff is precluded from recovery against the Defendant. It necessarily follows that the Defendant's Motion for Summary Judgment must be and the same is granted by separate Order.