**ERNEST CONSTRUCTION COMPANY, a partnership composed of Walter C. Ernest, Jr., Willie Maye Ernest, Billie Ann Corrigan and Walter C. Ernest, III, Plaintiffs,**

v.

**The TUG COMMODORE, its engines, tackle and appurtenances and Mobile Towing Company, a corporation, Defendants.**

**Civ. A. No. 4553-67.**

United States District Court
S. D. Alabama, S. D.

Dec. 10, 1968.

Allan R. Cameron, Sullivan & Cameron, Mobile, Ala., for plaintiffs.

Emmett R. Cox, Gaillard, Wilkins & Hardy B. Smith, Mobile, Ala., for defendants.

DANIEL HOLCOMBE THOMAS, Chief Judge.

This suit is for damages caused by a collision of the tug, TIMBER, against certain pilings being constructed by the plaintiff, Ernest Construction Company. The plaintiff seeks to recover damages in the amount of $2,186.51, which reflects the total costs incurred by the plaintiff to replace and repair the damaged pilings.

The answer of the defendant admits the collision, denies negligence and asserts that the collision was caused by a latent defect in the tug's machinery and sets up the defense of inevitable accident. Alternatively, the defendant claims that the pilings were improperly braced from water traffic.

This matter came on to be heard on the 29th day of October 1968, without a jury, and I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The facts surrounding the striking of the pilings are undisputed. On the night of May 2nd or the early morning hours of May 3, 1966, the tug, TIMBER, was assisting other tugs in the docking of a hull on the south side of Pier G of the Alabama Drydock and Shipbuilding Company located on the east bank of the Mobile River on Pinto Island in Mobile, Alabama. Pursuant to a contract with the Shipbuilding Company, the plaintiff was constructing piling on the north side

of Pier H. The wooden pilings, one foot in diameter and 75 feet long, had been driven and were standing some 12 feet above the water line. On top of the pilings were certain wooden concrete forms which had been set in preparation for the future pouring of concrete. Once the concrete had been laid, the pilings were to be bolted and braced, however, at the time of collision the pilings were secured to the pier by several strands of No. 9 wire.

On this night, the tide was high and the wind was blowing from the North. The tug, TIMBER, is a twin engine, single screw tug, approximately twenty years old. The evidence shows that as the tug was navigating in the slip between Pier G and Pier H, an oil line in the engine room ruptured causing the oil pressure to drop from the normal pressure of 35 pounds to 5 pounds of pressure. The Chief Engineer reported the oil pressure loss to the Captain and advised him that it would be necessary to stop both engines for a period of three or four minutes in order to cut out the engine which had developed the trouble. The Captain authorized the Chief Engineer to make this change. During this three or four minute interval the tug was either pushed by the hull or drifted toward the pilings standing on the north side of Pier H. Just prior to regaining power the tug's stern stuck and damaged 7 of the wooden pilings. The plaintiff's business manager testified that five of the pilings were broken at the mud line and two others were cracked. All seven of the pilings were replaced at a cost of $2,186.51.

The defendant showed that the tug lost power as a result of a ruptured oil line, asserting that the rupture could not be discovered by reasonable inspection. The ruptured portion of the oil line was introduced in evidence and was made of copper approximately eighteen inches in length and two and one-half inches in diameter. It was covered by a porous metal sheath. The line ruptured directly behind the fixed coupling and the leak was significant in size.

This portion of the line was flexible in order to absorb the constant vibration set up in the line when the engine is in operation.

The engineer aboard the tug testified that the engines were checked once a week and this inspection included a visual examination of the oil line. Only if the line was leaking would this examination reveal any defect, inasmuch as the metal sheath completely enclosed the line. No test of strength or durability was ever conducted on the line. The date of the tug's last major overhaul and the age of the line was unknown. The engineer stated that the lines were changed only if a leak was discovered and most leaks were of a pin-hole nature and caused no interruption of operations.

## CONCLUSIONS OF LAW

### I.

█ This Court has jurisdiction over this cause under Title 28, Section 1333, of the United States Code, as a matter cognizable in Admiralty.

### II.

██ It is well settled that the burden of proving inevitable accident is "heavily" upon the party asserting the defense. The defendant must affirmatively establish that the accident could not have been prevented by reasonable care. Boudoin v. J. Ray McDermott & Co., 281 F.2d 81, 88 (5 Cir. 1960); The Rob, 122 F.2d 312 (2 Cir. 1941). Where, as here, the defendant asserts that the accident was inevitable due to a latent defect in the vessel's machinery, something more than a mere failure in the machinery must be shown. The Westchester, 254 F. 576 (2 Cir. 1918).

### III.

█ In order for the defense of inevitable accident to be upheld, the proof must be convincing that the defect was really latent and that it could not have been discovered by the exercise of due diligence. Griffin, The American Law of Collision, Section 241(5). A true latent defect is not a gradual de-

terioration but is a defect in the metal. It must be shown that defect caused the break in the metal and was not due to wear and tear or inevitable depreciation. Mellon v. Federal Ins. Co., 14 F.2d 977, 1000 (2 Cir. 1926); Waterman S. S. Corp. v. United States S. R. & M. Co., 155 F.2d 687, 691 (5 Cir. 1946). To sustain the defense, the defendant must show proof of the oil line's age, history and strength and must show that it had not been used so long as to impair the strength of the metal. The William E. Reed, Hudson River Shipyards Corp. v. Metropolitan Sand & Gravel Corp., 104 F.2d 167 (2 Cir. 1939); In Re Reichert Towing Lines, 251 F. 214 (2 Cir. 1918). The defendant offered no evidence to show the age or strength of the line. The date of the line's installation was not known and the line had never been thoroughly examined. It is admitted that the line is subject to heavy and constant vibrations and the lines are only changed when a leak occurs. The defendant was accustomed to the lines developing minor leaks. The fact that a rupture of this magnitude had never previously occurred is not sufficient to label the collision as an "inevitable accident". The defendant has failed to establish that the striking of the pilings was caused by a latent defect in the oil line of the tug.

### IV.

■ When a moving vessel collides with a fixed object, there is a presumption the moving vessel is at fault. The Oregon, 158 U.S. 186, 15 S.Ct. 804, 39 L. Ed. 943 (1895); The Victor, 153 F.2d 200 (5 Cir. 1946). The presumption suffices to make a prima facie case of negligence against the moving vessel. Brown & Root Marine Operators Inc. v. Zapata Off-Shore Co., 377 F.2d 724 (5 Cir. 1967).

■ The Court finds that the defendant has failed to establish the defense of inevitable accident and is liable to the plaintiff for the reasonable cost of repairs to the pilings.

Order to be entered accordingly.