ELGIN, JOLIET AND EASTERN RAIL-
WAY COMPANY, Plaintiff,

v.

AMERICAN COMMERCIAL LINE, INC.,
and Inland Tug Company, Inc., etc.,
Defendants.

No. 69 C 2511.

United States District Court,
N. D. Illinois, E. D.

Aug. 17, 1970.

George W. Gessler, Hackbert, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for plaintiff.

Michael A. Snyder, Bradley, Eaton, Jackman & McGovern, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

This is an action for damages allegedly caused to plaintiff's bridge when it was struck by a barge that was being pushed by defendant's vessel. Plaintiff, Elgin, Joliet and Eastern Railway Company, owns a bridge which spans the Illinois River near Divine, Illinois. Defendant, Inland Tug Company, owns and operates the motor vessel Chicago Trader.

On the afternoon of May 28, 1968, the Chicago Trader was pushing eight loaded barges downstream on the Illinois River. As the barges navigated past plaintiff's bridge, the lead barge on the port side struck the south sheer fence which protected the bridge. The south sheer fence was composed of large oak timbers which had been erected to protect the bridge supports from being

damaged by vessels passing under the bridge.

Plaintiff had the damage to the south sheer fence repaired, and it brought this action to recover the cost of the repairs from defendant. The case was heard under the court's maritime jurisdiction. 46 U.S.C. § 740; 28 U.S.C. § 1333(a).

There is little doubt that defendant was negligent. When a moving vessel, such as the Chicago Trader, strikes a stationary object, such as plaintiff's protective fence, an inference of negligence arises, and the vessel has the burden of establishing that it was free from fault. The Oregon, 158 U.S. 186, 15 S. Ct. 804, 39 L.Ed. 943 (1894); Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724 (5th Cir. 1967); Dibble v. United States, 295 F. Supp. 669 (N.D.Ill.1968). Not only did defendant not rebut this presumption, but negligence in the operation of the Chicago Trader was proved affirmatively. The weather on the afternoon of May 28, 1968, was good. The pilot of the Chicago Trader had navigated through plaintiff's bridge at least twenty times in the past. Defendant's vessel was pushing a total of eight tugs, each 35 feet wide and 195 feet long. They were arranged three abreast in the first two rows, and two abreast in the back row. Thus the tow was at least 105 feet wide and 585 feet long, not counting defendant's vessel. The bridge draw was 113.6 feet, leaving a clearance of only 4.3 feet on each side of the tow. These facts, plus the pilot's admission in a subsequent accident report that his error was responsible for the collision, establish affirmatively that defendant was negligent.

The major issues in this case relate to the proper measure of damages. Defendant contends that plaintiff failed in its duty to mitigate damages. After the Chicago Trader collided with plaintiff's protective fence, plaintiff asked for bids on the repair work from two companies, Fitz Simons and Connel and John D. Simpson Company. The Simpson bid was approximately $7000 higher than the Fitz Simons and Connel bid. However, Simpson assured plaintiff that it could begin the repair work immediately, while Fitz Simons and Connel stated that it could not begin work for three months. As a result, plaintiff accepted the higher Simpson bid, and the repair work was completed within approximately one month. Defendant now argues that by accepting the higher bid, plaintiff failed to mitigate its damages.

It is well settled that a party who is injured by the negligent act of another is required to exercise reasonable care to minimize the resulting damage, and to the extent that damage is the result of a failure to exercise such reasonable care, the injured party cannot recover. Industrial Sugars, Inc. v. Standard Accident Insurance Co., 338 F.2d 673 (7th Cir. 1964); Ellerman Lines, Ltd. v. President Harding, 288 F.2d 288 (2d Cir. 1961). The facts clearly show that plaintiff exercised reasonable care to minimize its damages. Had plaintiff accepted the lower bid and then waited three months for repair work to begin on the south sheer fence, the safety of the bridge would have been jeopardized. The pilings and bracings, which were only about six feet from the bridge support, had been badly damaged by the Chicago Trader. If plaintiff had delayed in having the bridge repaired, and if the south sheer fence had again been struck by a passing vessel, the bridge might well have been knocked into the river, thus blocking river traffic completely at that point. In accepting the Simpson bid to repair the damaged fence immediately, plaintiff exercised reasonable care to minimize its damages.

Another issue is whether plaintiff's damages should be reduced to allow for the fact that its fence, depreciated in value prior to the collision, was restored to substantially new condition by the repair work. Plaintiff relies on the rule of *restitutio in integrum,* which denies a depreciation deduction for damage done to vessels. See The Baltimore, 75 U.S.

(8 Wall.) 377, 19 L.Ed. 463 (1869). Plaintiff argues that the rule which denies a depreciation allowance for damage done to vessels has been extended to deny a similar allowance for damage to a structure on land, when struck by a vessel in navigable water.

 Plaintiff relies on 46 U.S.C. § 740 (1948) to support its argument. That statute extends admiralty jurisdiction to injuries which are done or consummated on land by a vessel on navigable water. While admittedly extending admiralty jurisdiction, the statute does not purport to change the substantive rules of law relating to damages and depreciation. It merely permits federal courts, in their admiralty jurisdiction, to hear cases which were formerly not within the admiralty jurisdiction. See G. Gilmore and C. Black, The Law of Admiralty, § 7–17 (1957). The traditional rule with respect to damage done to land-based objects by vessels on navigable water, and the rule which applies in this case, is that an allowance is made for depreciation of the damaged object at the time of the collision. Oakdene Compress and Warehouse Co. v. S/S Cities Service Norfolk, 242 F.Supp. 148 (E.D.S.C.1965); Patterson Terminals, Inc. v. S. S. Johannes Frans, 209 F. Supp. 705 (E.D.Pa.1962).

 At trial, the useful life of the south sheer fence was variously estimated as between twenty and thirty-five years. Most of the parts of the fence damaged by the Chicago Trader had been replaced within six years prior to the collision, hence the fence was substantially new. Substantial repairs were done on the timbers and pilings in 1962 and again in 1965. Numerous back whalers and back braces behind the fence were replaced in 1966. Considering these factors, and considering that it was common for tows navigating through plaintiff's bridge to rub up against the south sheer fence and add to its wear and tear, I find that plaintiff's fence had depreciated 20 per cent at the time of the collision. Plaintiff is enti-

tled to 80 per cent of the cost of repairs ($23,100), or $18,480.

 The final issue relates to the award of interest. In cases of this sort, the court will generally allow the plaintiff interest from the date of the collision. Harris v. Sabine Transportation Co., 202 F.2d 537 (5th Cir. 1953). There is no reason to deviate from this practice here. Defendant argues that the case of Patterson Terminals, Inc. v. S. S. Johannes Frans, *supra*, is controlling, in which the court refused to award plaintiff interest. However, the court's refusal was predicated upon the fact that plaintiff, after repairing a damaged caisson, enjoyed one which was bigger and more stable, and which had a larger capacity than the old caisson. Patterson Terminals, Inc. v. S. S. Johannes Frans, *supra* 209 F.Supp. at 710. Here, however, plaintiff's repaired fence was precisely the same size as the old one. Plaintiff claimed no more than its actual loss occasioned by the collision with defendant's vessel. See Samincorp. v. S. S. Rivadeluna, 277 F.Supp. 943 (D.Del.1967).

For the foregoing reasons, judgment will be entered for plaintiff in the sum of $18,480, plus interest from May 28, 1968.