**LOUISVILLE & NASHVILLE RAIL-
ROAD COMPANY, a corpora-
tion, Plaintiff,**

v.

**M/V CIUDAD De TURBO, her engines,
hull, tackle, appurtenances, etc., in
rem, et al., Defendants.**

**Civ. A. No. 5746-69.**

United States District Court,
S. D. Alabama, S. D.

Aug. 12, 1971.

A. Clay Rankin III, Mobile, Ala., for plaintiff.

Sidney H. Schell, Mobile, Ala., for defendants.

DANIEL HOLCOMBE THOMAS, Chief Judge.

The above-styled case was regularly set down for trial on June 16, 1971, and after hearing and considering the evidence, exhibits and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDING OF FACTS

1. This is an *in rem* action by the Louisville and Nashville Railroad Company (L&N) against the M/V Ciudad De Turbo [1] for damages suffered by the

---

1. The *in rem* defendant, the Tug Austill Pharr, and the *in personam* defendant, Mobile Towing Company, were dismissed with prejudice under Rule 41(a) (2) at the trial on June 16, 1971.

fender system of L&N Bridge Number 200 on the Chickasawbogue in Mobile, Alabama.

2. The Ciudad De Turbo struck the northeast fender of Bridge Number 200 with the starboard quarter of her bow on December 17, 1968, at 6:50 A. M. The Tug Austill Pharr struck the southeast fender system near the bridge. The Ciudad De Turbo was fully loaded with cargo and traveling at approximately one mile per hour at the time of the collision. Twelve pilings—each measuring 12 to 14 inches in diameter at the top—were broken by the impact as well as several whaling timbers attached thereto.

3. The bridge is located at the mouth of the Chickasawbogue approximately ¼ to ½ mile from the Cochrane Bridge over the Mobile River.[2] Vessels passing through Cochrane Bridge must make an approximately 30 degree turn in order to enter Chickasawbogue. The northeast fender extends 256 feet east from the bridge. (See Plaintiff's exhibit No. 2) The Ciudad De Turbo struck the fender system at the fifth bent [3]—approximately 40 feet from the end of the fender. A section of the fender approximately 50 feet long had to be replaced.

4. The bridgetender noticed that the Ciudad De Turbo was "out of line" in her approach to the bridge when she was 500 to 700 feet away. No one from the tug or the ship testified. The Court finds that the Ciudad De Turbo was negligent in striking the fender system.

5. The fender system was repaired at a cost of $10,023.22, which the Court finds to be reasonable.

6. This fender system was designed to encounter some contact with floating vessels without sustaining damage. However, the bents throughout the fender system were not constructed in complete accordance with its design.[4] The Court finds that the discrepancy between design and construction significantly weakens the structure. No evidence was offered, however, showing that the pilings that the Ciudad De Turbo knocked down were not constructed in accordance with the design. The defendant has only inferred that such was the case since Mr. Hill testified that his inspection in May 1971 revealed most of the bents were not constructed as designed.

7. The plaintiff's Bridge Supervisor, Albert Bush, said the life expectancy of the fender system was 45–50 years. Mr. Hill's testimony was that if constructed as designed it had a life expectancy of 10 years; as constructed, the

---

3. The term "bent" refers to the connected fender pile and batter pile.

4. See *Appendix A* which is a scale drawing by Marine Surveyor Henry Hill introduced as Defendant's Exhibit No. 6.

first vessel to hit it would knock it down. Mr. Bush testified that only a part of the fender system remains from its original construction in 1928. Of the bents damaged by the Ciudad De Turbo, one was driven in 1958, two were in 1963, three were in 1965.[5] Considering the manner of construction and the likelihood of contact with vessels,[6] the Court gives the system a life expectancy of 25 years.

8. The collision of the Tug Austill Pharr with the southeast fender was caused by the Ciudad De Turbo's striking the northeast fender.

9. The plaintiff paid the sum of $10,023.22 in April 1969, for the repairs.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over this case under 28 U.S.C.A. § 1333 and 46 U.S.C.A. § 740.

2. A presumption of negligence arises in admiralty when a moving vessel strikes a stationary object. To rebut this presumption the vessel must show that she was without fault or that the collision was occasioned by the fault of the stationary object or was the result of an inevitable accident. Sabine Towing and Transportation Company v. St. Joe Paper Co., 297 F.Supp. 748 (N.D.Fla. 1968); State Road Dept. of Fla. v. Gulf States Marine & Min. Co., 168 F.Supp. 242 (N.D.Fla.1958), affirmed 269 F.2d 83 (5th Cir. 1959); Ernest Construction Company v. Tug Commodore, 294 F.Supp. 15 (S.D.Ala.1968). This rule applies even though the stationary object is a fender system for a bridge. State Road Dept. of Fla. v. Gulf States Marine & Min. Co., supra. The defendant offered no evidence that she was without fault in colliding with the fender system.

3. The main question in this case is the measure of damages. The plaintiff urges the Court to follow the rule of *restitutio in integrum* from The Baltimore, 75 U.S. (8 Wall.) 377, 19 L. Ed. 463 (1869). The Court declines to do so.

* * * The traditional rule with respect to damage done to land-based objects by vessels on navigable water, and the rule which applies in this case, is that an allowance is made for depreciation of the damaged object at the time of the collision. Oakdene Compress and Warehouse Co. v. S/S Cities Service Norfolk, 242 F.Supp. 148 (E.D. S.C.1965); Patterson Terminals, Inc. v. S. S. Johannes Frans, 209 F.Supp. 705, (E.D.Pa.1962).[7]

4. The life expectancy of the fender system being 25 years and the average age of the pilings damaged being five years, the Court finds that plaintiff is entitled to damages of $10,023.22 less a 20% depreciation allowance, or $8,018.58.

5. The plaintiff is entitled to interest on the award at the rate of 6% from April 30, 1969,[8] to the date of this order. Oakdene Compress and Warehouse Co. v. S/S Cities Service Norfolk, supra.

Judgment will be entered in accordance herewith.

---

5. Three of the undamaged bents at the end of the fender system were driven three months before this accident.

6. The 30 degree turn into a 131 foot channel in less than ½ mile increases the likelihood of contact. There were, however, only two collisions in 1968.

7. Elgin, J. & E. Ry. Co. v. American Commercial Line, Inc., 317 F.Supp. 175 (N.D. Ill.1970) at 177. This case involved a barge damaging a fender system of a bridge.

8. The exact date in April 1969 that the bill was paid was not shown.

APPENDIX A

### HENRY HILL

NAVAL ARCHITECT, MARINE SURVEYOR AND CONSULTANT

Also Representing:
THE INTERNATIONAL CARGO GEAR BUREAU, INC.

[A4406]