943 F.2d 48
 1992 A.M.C. 304, 1992 A.M.C. 392
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CARGILL, INCORPORATED, Plaintiff-Appellant,
v.
C & P TOWING COMPANY, INCORPORATED, Northeast Towing,
Incorporated, in personam, TUG RANDY D, her
engines, boilers, etc., in rem,
Defendants-Appellees.
 No. 90-1525.
 United States Court of Appeals, Fourth Circuit.
 Argued June 3, 1991.
Decided Sept. 17, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Tommy E. Miller, Magistrate Judge. (CA 89-378-N)
 James Long Chapman, IV, Guilford D. Ware, Crenshaw, Ware & Martin, Norfolk, Va., for appellant.
 Philip Norton Davey, Davey Associates, P.C., Norfolk, Va., for appellees.
 E.D.Va.
 AFFIRMED.
 Before POWELL, Associate Judge (Retired), United States Supreme Court, sitting by designation, and DONALD RUSSELL and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The question presented in this admiralty case is who bears responsibility for the loss of a grain laden barge which capsized and sank while being towed in the Chesapeake Bay on February 25, 1989. Appellant, a grain storage company and the owner of the capsized barge, claims that the appellees, two towing companies and a tug, caused the accident by negligently towing the barge during inclement weather. Appellees counter with two defenses. They disclaim any negligence, and they assert that the unseaworthiness of the barge caused the accident. A United States Magistrate Judge, who presided over the non-jury trial of this case, agreed with the appellees. He found that the appellees exercised reasonable seamanship in towing the barge and that the sole proximate cause of the accident was the unseaworthiness of the barge. The action was dismissed on the merits. We agree with the magistrate judge's material findings of fact and conclusions of law, and affirm.
 
 
 2
 * Appellant is Cargill, Inc. (Cargill). Appellees are two towing companies, C & P Towing Co., Inc. (C & P Towing) and Northeast Towing Co., Inc. (Northeast Towing), and the RANDY D., a tugboat. Cargill entered into an agreement with C & P Towing to tow one of its barges from a Cargill facility located in Seaford, Delaware to another located in Norfolk, Virginia. C & P Towing subcontracted with Northeast Towing to perform the job. Northeast Towing in turn engaged the RANDY D. to tow the barge. The RANDY D. left Seaford on the evening of February 24, 1989. With barge in tow, it headed south on the Nanticoke River toward the Chesapeake Bay. Soon after dawn on the 25th, the barge capsized in the Chesapeake Bay near Tangier Sound. The barge eventually sank taking down with it a cargo of over 52,000 bushels of wheat.
 
 
 3
 Cargill initiated an admiralty action in the United States District Court for the Eastern District of Virginia. It brought the suit against C & P Towing and Northeast Towing in personam and the RANDY D. in rem. Cargill sought $485,447 in damages. The parties consented to try the case without a jury before a United States Magistrate Judge. See 28 U.S.C. § 636(c). After hearing extensive evidence, including twenty-three witnesses and seventy exhibits, the magistrate judge rejected Cargill's claims. He issued a fifty-seven page opinion, comprehensively setting forth his findings of fact and conclusions of law. The most important of these were the following:
 
 
 4
 Douglas and the crew of the RANDY D. acted reasonably in departing Seaford. They also acted prudently while on the voyage and when they noticed the list of the barge and when they noticed the list increase. Consequently, the Court holds that Douglas and the crew were not responsible for the capsize and sinking of the NF-103 [barge].
 
 
 5
 ... The Court holds that the sole proximate cause of the capsize and sinking of the NF-103 was the unseaworthiness of the NF-103.
 
 
 6
 (citations omitted). Cargill, Inc. v. C & P Towing Co., No. 89-378-N, slip op. at 55-56 (E.D.Va. Aug. 16, 1990). Cargill filed a timely appeal.
 
 II
 
 7
 Our standard of review is a familiar one. We review the magistrate judge's application of legal principles de novo; we review his findings of fact under the clearly erroneous standard of Fed.R.Civ.P. 52(a). To apply this standard, we must classify the issues raised on appeal. Cargill contends that the magistrate judge's conclusions concerning negligence are mixed questions of law and fact, which are subject to full review under Hicks v. United States, 368 F.2d 626, 631 (4th Cir.1966). More recent decisions of this Circuit, however, indicate that Hicks "has to a large degree been abandoned." Bonds v. Mortensen & Lange, 717 F.2d 123, 125 (4th Cir.1983). In admiralty cases we now treat lower courts' findings of negligence as factual issues reviewable under the deferential standard of Fed.R.Civ.P. 52(a). Id. See also Ente Nazionale Per L'Energia Electtrica v. Baliwag Navigation, Inc., 774 F.2d 648, 654 (4th Cir.1985) (same standard of review with respect to findings of causation).
 
 
 8
 * We reject each of Cargill's challenges to the magistrate judge's rulings of law. To begin with, the magistrate judge applied the correct standard of liability. The test is whether operators of the tug "exercise[d] such reasonable care and maritime skill as prudent navigators employ for the performance of similar service." Stevens v. The White City, 285 U.S. 195, 202 (1932). It is true, as Cargill points out, that the magistrate judge's opinion contains a single quotation suggestive of a more lenient measure of liability. Yet the opinion as a whole clearly applies a duty of reasonable care in navigation. One need look no further than the magistrate judge's conclusion to see that this is correct. It speaks solely in terms of reasonableness and prudence. See Cargill, slip op. at 55-56.
 
 
 9
 Second, the magistrate judge correctly held that there is no implied warranty of workmanlike service in a towage contract, at least not one that imposes liability in the absence of negligent conduct. Such a rule would conflict with the reasonableness standard applicable to maritime tort actions under The White City. Moreover, no precedent in this Circuit approves the rule Cargill would have us adopt. Contrary to Cargill's submission, Tebbs v. Baker-Whiteley Towing Co., 407 F.2d 1055 (4th Cir.1969), is inapposite. There, we found that a negligent tug breached the warranty of workmanlike service in towing a "dead ship." Id. at 1058-59. To the extent Fairmont Shipping Corp. v. Chevron Int'l Oil Co., 511 F.2d 1252 (2d Cir.),cert. denied, 423 U.S. 838 (1975), calls for a different rule, we are not convinced that the standard articulated in that case can coexist with a standard of reasonable seamanship. Consequently, we do not adopt it.
 
 
 10
 Third, the magistrate judge's analysis of the duty of a tug's crew to investigate its tow comports with precedent in this Circuit. See Complaint of Steuart Transp. Co., 435 F.Supp. 798, 804 (E.D.Va.1977), aff'd, 596 F.2d 609 (4th Cir.1979). It was enough that the crew of the RANDY D. visually inspected the barge before leaving Seaport. Testimony by Bryan A. McGowan, a tugboat captain, indicated that the crew's inspection met industry standards.
 
 B
 
 11
 We also reject Cargill's challenges to the magistrate judge's findings of fact. Although Cargill exposes minor discrepancies between the facts reported by the magistrate and the evidence introduced at trial, it fails to show that the dispositive findings were clearly erroneous.
 
 
 12
 The record supports the magistrate judge's finding that Captain Douglas acted reasonably in departing Seaford. Cargill's barge was loaded and ready for tow on the evening of February 23, 1989. Due to inclement weather, however, Captain Douglas, a seasoned mariner with thirty-five years of experience piloting tugboats on the Chesapeake Bay, remained in Seaport for the night. Only when forecasts improved did he depart the following evening. We agree with the magistrate judge's assessment of that decision: Based on the available forecasts, Douglas reasonably concluded that the worst part of the storm had passed and that the diminishing winds would allow safe passage across the Chesapeake Bay once the crafts emerged from the protected waters of the Nanticoke River. Also, in view of later forecasts and the weather Douglas actually observed, it was reasonable to proceed into the Chesapeake Bay by way of Tangier Sound once the tug and barge reached the mouth of the Nanticoke River.
 
 
 13
 The evidence further supports the magistrate judge's finding that the crew responded prudently to the increasing list of the barge. The list developed before dawn and swiftly became threatening. Lack of light and time thus limited the options available to Douglas. So, too, did the safety risks Douglas confronted. Had he turned back to investigate the barge or sought to beach it, as Cargill claims he should have, he would have endangered the tug, the barge, and the crew. In this context Douglas's response to the listing barge was a reasonable one. He reduced his speed and altered slightly his direction to lessen the effect of the seas on the barge. Hindsight of course sharpens our view of the options then open to the Douglas. Yet, if we evaluate Douglas's actions from the perspective of the circumstances he faced on that February morning, as we must, we cannot say that the magistrate judge's finding of prudent seamanship was clearly erroneous.
 
 
 14
 Having affirmed the above factual findings, we concur with the magistrate judge's conclusion that the captain and crew of the RANDY D. did not breach their duty of reasonable care to Cargill. Cargill's negligence claims therefore were properly rejected.
 
 III
 
 15
 As an alternative ground for our decision, we briefly address the magistrate judge's findings concerning the poor condition of the barge and causation. The record sustains the magistrate judge's finding that the barge was unseaworthy. Prior to the accident, the barge had required several repairs to its hull and cargo box, at least one of which had not cured recurring leaks into the cargo hold. An expert witness who inspected the barge after the accident, as well as the company responsible for salvaging the barge, also provided evidence of the barge's poor condition. Based on their post-accident inspections, they concluded that the holes in the hull and the faulty manhole covers were caused by damage and corrosion that predated the accident.
 
 
 16
 Finally, the record supports the magistrate judge's finding that the unseaworthiness of the barge alone proximately caused the accident. In reaching this conclusion, the magistrate judge accepted the testimony of defendants' expert, Hendrik F. van Hemmen. Hemmen offered several plausible scenarios as to how the inferior condition of the barge allowed water to enter the void tanks of the barge causing it progressively to tilt and finally to capsize. Cargill, to be sure, offered contrary evidence. But it was not clearly erroneous for Magistrate Judge Miller, who had an opportunity to assess the credibility of all of the witnesses, to credit the testimony of one witness and not that of the others. See Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible view of the evidence, the factfinder's choice between them cannot be clearly erroneous.")
 
 IV
 
 17
 The magistrate judge applied correct legal principles to this action. We accept his findings of fact. After drawing permissive inferences from the competing evidence, he properly concluded that the crew of the RANDY D. exercised reasonable seamanship and that the sole proximate cause of the accident was the barge's unseaworthy condition. The judgment is
 
 
 18
 AFFIRMED.