**GENERAL CONSTRUCTION COM-PANY, Libelant,**

v.

**ISTHMIAN LINES, INC., owner and operator of the VESSEL STEELMAKER, and the VESSEL KOKUSAI MARU, her engines, tackle and gear and any and all persons claiming any interest therein, Respondents,**

**Kowa Shosen, K.K., Claimant,**

**The PORT OF ASTORIA, a municipal corporation, Third-Party Respondent.**

**Civ. No. 65–159.**

United States District Court
D. Oregon.
June 23, 1966.

William H. Poole, Krause, Lindsay & Nahstoll, Portland, Or., for libelant.

William F. White, White, Sutherland & Gilbertson, Portland, Or., for respondents.

John G. Holden, Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for claimant.

Nathan J. Heath, Gray, Fredrickson & Heath, Portland, Or., for third party respondent.

## OPINION AND FINDINGS

KILKENNY, District Judge.

The vessel STEELMAKER, while leaving her berth at Pier No. 2, Port of Astoria, on April 1, 1965, at approximately 6:30 A.M., came against the pile fender corner under construction by the libelant. On the same day, at approximately 8:00 A.M., the vessel KOKUSAI MARU on entering the same berth came against the same pile fender corner.

Libelant instituted this libel against the owners of the respective vessels. It was the contractor in charge of construction of the pile fender pursuant to agreement with the third-party respondent, The Port of Astoria. The latter owns and operates the wharf and dock facilities in navigable waters on the Columbia River at Astoria, Oregon. The design, plans and specifications for the pile fender corner involved in the collision were supplied to libelant by the third-party respondent and the corner was being built in accordance therewith. The parties agree that the cost of repairs to the corner, following the successive collisions, totaled $8,100.00. They do not agree as to the percentage of the total which was caused by each collision.

I. When the STEELMAKER left her berth an ebb tide was running and her pilot was familiar with the fact that a new fender was being built at Pier No. 2. Two tugs were in attendance on the STEELMAKER, one at the starboard quarter and the other on the port bow. As the vessel proceeded astern, the tug on the starboard quarter began pushing, but could not hold her against the ebbing

tide. No orders had been issued to the tug on the port forward position and, as a result, she did nothing. There was substantial testimony that one tugboat was not strong enough to hold the ship against the action of the tide and that a vessel leaving the berth like the STEELMAKER could leave it without in any way leaning on the corner. Likewise, there was substantial evidence that the particular corner was in what is known as a condemned area, i. e., roped off, and was not supposed to be used.

■ Conceding that a fender corner is constructed for the purpose of taking shocks from maneuvering vessels, the fact remains that respondents had notice that the particular fender was under construction and should have known that it was not at full strength. As a matter of fact, some of the witnesses testified that, at its then stage of construction, the piling might be compared to a bunch of "match sticks" in the water. I have no difficulty in finding that the STEELMAKER and those in charge of her navigation, were guilty of fault or negligence at the time and place of the collision in the following particulars: (A) in allowing the ship to come against the pile fender corner, when those in charge of the navigation of the vessel knew, or in the exercise of reasonable care should have known, that the pile fender corner was then under construction; (B) in failing to use the available tugs which were standing by, in a manner so as to leave said berth without coming in contact with the then fragile pile fender corner; (C) in failing to consider the tide and current conditions then prevailing when it knew, or by the exercise of reasonable diligence should have known, the effect that said tide would have on the maneuverability of the ship.

Each of said findings of fault on the part of the STEELMAKER was a proximate cause of the collision with the fender corner and resulting damage.

II. Turning now to the charges of fault and negligence against the KOKUSAI MARU and those in charge of her navigation.

■ Although the KOKUSAI MARU dropped an anchor to aid in berthing, the pilot wasn't even aware of the fact that he came against the pile fender. The pilot conceded he had trouble in navigating the vessel by reason of the inability of the tug to push hard enough to keep the stern in a proper position. He had actual knowledge of the construction work and saw, or should have seen, the damage caused by the STEEL-MAKER. He had no intention of leaning against the fender and did not believe that he was close enough to need the available tugs which were standing by. It is manifest that the KOKUSAI MARU, and those in charge of her navigation, were guilty of fault and negligence at the time of the collision in the following particulars: (A) in failing to use the available tugs which were standing by, in a manner so as to properly enter the berth without coming in contact with the fender corner; (B) in dropping the forward port anchor in such a manner so as to allow the stern of the ship to swing around and come in contact with and against the fender corner; (C) in failing to consider the tide and the current conditions then and there prevailing when it knew, or by the exercise of reasonable diligence should have known, of the strong tides and current conditions then and there existing; (D) in improperly navigating the vessel so as to cause or permit it to come against and strike the said pile fender corner when those in charge of its navigation knew, or by the exercise of any reasonable diligence should have known, that said fender corner was under construction and was then damaged.

■ My findings, that each of the vessels had actual notice of the fact that the fender corner was under construction, render completely inapplicable White Stack Towing Corp. v. Hewitt Oil Co., 216 F.2d 776 (4th Cir. 1954), a case in which the dolphins were designed for the very purpose of breasting a docking ship. The dolphins (fender corner) in *White Stack* were not under construction. Here, the overwhelming weight of the evidence was that the corner, even at the time of the STEEL-MAKER collision, did not have available its full impact strength, which would have been present after completion. The language in *White Stack* might be of considerable significance if in that case, as here, the dolphins were under construction, and the vessel and her navigators were aware of that fact. Aside from my specific findings of fault, I believe that the rule requiring a moving vessel to explain a collision with a stationary object is here applicable. In such a case, a presumption of negligence arises. Carr v. Hermosa Amusement Corp., Ltd., 137 F.2d 983 (9th Cir. 1943), The Oregon, 158 U.S. 186, 15 S.Ct 804, 39 L.Ed. 943 (1895). I do not need to quarrel with the rule stated in Pennsylvania R. R. Co. v. S. S. Marie Leonhardt, 320 F.2d 262 (3rd Cir. 1963), that a presumption may disappear as a matter of law, when each side presents complete testimony as to its version of what happened at the time of a collision. I decide this case on the evidence in the record, rather than on any particular presumption.

■ Respondents urge that The Port of Astoria had an obligation to warn a ship of any unexpected hazard or deficiency, Mendomsley v. Elizabeth River Terminals, Inc., 354 F.2d 476 (4th Cir. 1966) and that libelant is burdened with the same responsibility. They argue that a warning to the Pilots Association in Astoria that the fender was fragile and should not be leaned against, could well have prevented the collision. The argument would be sound if it was not for the fact that each of the vessels made an effort to avoid contact with the corner, the KOKUSAI MARU by maneuvering and the STEELMAKER by the use of a single tug against the ebb tide, and the further fact that the pilot of each of the vessels was fully aware of the fact that the corner was under construction. What more would have been added by the giving of a formal notice to the Pilots Association? The general concept of a formal notice which seemed

to originate in Smith v. Burnett, 173 U.S. 430, 19 S.Ct. 442, 43 L.Ed. 756 (1899) is not applied where the alleged obstruction or condition is open and obvious to those in charge of the vessel's management. Here, the absence of constructive notice, must give way to the finding of actual knowledge. In addition to actual notice, each of the vessels was under the control of a pilot whose expertise gave to him a special knowledge and familiarity with local conditions.

On all of the evidence, I find that the fender corner was not intended to be used to breast ships until it had been completed. To find otherwise would be against the record and against good common sense. Corner fenders and similar constructions are essential components of maritime facilities. They might never reach a point of maximum strength and completion if the law followed respondents' theories and permitted vessels to lean against and destroy the structures before they reached maximum strength. It is unrealistic to argue otherwise.

Cases such as United States v. Henry Steers, Inc., 8 F.Supp. 363 (S.D.N.Y. 1934) and The Mars, 102 F.Supp. 43 (E.D.Pa.1951), are of no help. The warnings there involved did not give those in charge of the navigation of the vessels an adequate warning of the type of danger to be encountered. Here, not only did the pilots know of the unstable condition of the fender corner and attempt to avoid contact, but the stage of construction was open and obvious. Libelant's pile-driver, being located at the face of the dock, did not interfere with the tug assistance to the STEELMAKER and the pile-driver location was not a causative factor of the collision.

It is my view, and I find, that respondent Isthmian Lines, Inc. has failed to supply the necessary burden of proof on its charges of negligence against the General Construction Company and The Port of Astoria. Likewise, I find that respondent KOKUSAI MARU has failed to carry the burden of proof on its contentions against the libelant, The Port of Astoria and the respondent Isthmian Lines, Inc.

Under the contract between the libelant and The Port of Astoria, the libelant accepted full responsbility for any and all injury or damage to the fender corner from any and all causes whatsoever until completion and final acceptance thereof. Libelant is the proper party to prosecute this libel.

### DAMAGES

The parties have agreed on a total damage of $8,100.00. Respondents' urge that the evidence on what damage should be attributed to the first collision and what damage to the second collision is so speculative, meager and insubstantial that the Court should exonerate them, even though each was a causative factor in the collision. Admittedly, there is no evidence as to the exact amount which might be attributable to each collision. This, however, is quite understandable. The collisions occurred within a few hours of each other in the very early morning, when personnel of libelant were probably not available to make an estimate of the damage caused by the first collision, before the second collision occurred. There is substantial evidence in the record that the STEELMAKER caused a collapse of three pilings and that KOKUSAI MARU added four. Libelant suggests that three-sevenths of the total should be assessed against the STEELMAKER and four-sevenths against the KOKUSAI MARU. On the record, however, I find support for a finding that the first collision was just as severe as the second and although only three pilings collapsed, it is probable that a fourth was damaged. I find that each of the respondents should pay $4,050.00 of the damages sustained.

Based on the foregoing findings of fact, the Court makes the following

### CONCLUSIONS OF LAW

#### I.

Libelant is entitled to a judgment and decree against the respondent Isthmian Lines, Inc., the owner and operator of

the vessel STEELMAKER, for the sum of $4,050.00, together with one-half of libelant's costs and disbursements, and to a judgment and decree against KOWA SHOSEN, K.K., owner and operator of the vessel KOKUSAI MARU, for the sum of $4,050.00, together with one-half of libelant's costs and disbursements incurred herein.

## II.

The cross-libel of respondent Isthmian Lines, Inc. against The Port of Astoria should be dismissed.

## III.

The cross-libel of KOKUSAI MARU against The Port of Astoria should be dismissed.

## IV.

The cross-libel of KOKUSAI MARU against respondent Isthmian Lines, Inc. should be dismissed.

This opinion, together with the agreed facts in the pre-trial order, shall serve as the findings and conclusions. Counsel for libelant shall prepare, serve and present an appropriate decree.