**Olney M. WARDELL, Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, NATIONAL TRANSPORTATION SAFETY BOARD, Respondent.**

No. 88–7531.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1989.

Decided Sept. 6, 1989.

James Gilmore, Gilmore & Feldman, Anchorage, Alaska, for petitioner.

Marc Richman and Mary Doyle, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before O'SCANNLAIN, LEAVY, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Captain Wardell seeks review of an Opinion and Order of the National Transportation Safety Board (NTSB) suspending his merchant mariner's license. While we note that there were significant procedural defects in the Coast Guard's administrative hearing, we uphold the NTSB's decision because Captain Wardell failed to introduce any evidence that could rebut the presumption of negligence operating against him.

## BACKGROUND

Captain Wardell was the pilot aboard the S.S. GREATLAND on March 17, 1985, and he was conning the vessel at the time of an allision [1] with the Port of Anchorage City Dock.

On March 4, 1985, an administrative hearing was commenced at Anchorage, Alaska, Administrative Law Judge (ALJ) Wilkes presiding. The Coast Guard alleged that the allision occurred because Captain Wardell was negligently off course during the approach to the dock and was closer to the dock than prudent when he initiated his "dock turn." It was the Coast Guard's contention that the resulting lack of turning room caused the allision.

Captain Wardell contended that the GREATLAND was on course and had commenced her starboard turn at the usual point one mile off the dock, but that an unusually strong current embarrassed her progress in the midst of her starboard turn toward the dock resulting in the allision.

---

1. An allision occurs when a moving vessel strikes a stationary object.

At the hearing, the Coast Guard was represented by Lt. J.D. Klimas, the investigating officer. The ALJ allowed Klimas to testify, in effect, as an expert witness. Klimas introduced his own testimony and at least two charts, reconstructing, in his opinion, the course of the GREATLAND. The charts reflected his conclusions drawn from the data in the vessel's bell books and course recorder strip. Counsel for Captain Wardell objected to the introduction of the testimony and demonstrative evidence on the grounds that the Lt. Klimas was an unsworn witness, that he had not been qualified as an expert in navigation or marine accident reconstruction, that the charts and testimony were flawed by Lt. Klimas's failure to make corrections for course recorder error or gyro compass error (which was found to equate to a three degree cumulative error), and that Lt. Klimas's testimony violated the rule of exclusion set forth in 46 C.F.R. § 5.501(d)(5).[2]

On March 5, 1986, the ALJ found that the presumption of negligence created when a moving vessel hits a stationary object had not been rebutted, and further, that negligence had been shown by substantial evidence. He determined that the vessel was off her intended course when she reached the turning point, and that she was only one-half to one-quarter of a mile away from the dock when commencing her ill-fated starboard turn. The ALJ rejected Captain Wardell's contention that the vessel encountered an unexpected current once into the turn, finding the current was within its normal range as to both direction and force. The ALJ made a finding of fact that Captain Wardell's failure to plot the position of his vessel demonstrated his failure to meet the level of care required of a pilot, and that this was relevant to the determination of negligence charged. The ALJ imposed a suspension of Captain Wardell's license for three months, considering, *inter alia,* the extensive damage the accident caused.

On July 20, 1987, the Vice–Commandant affirmed Judge Wilkes' decision. The Vice–Commandant determined that it was error to allow Lt. Klimas's testimony and accompanying documentary evidence into the record, but that Captain Wardell had failed to demonstrate prejudice since the controlling presumption of negligence had not been rebutted. The Vice-Commandant rejected the Captain's argument that the presumption could not be relied upon once the Coast Guard introduced evidence of actual negligence.

Captain Wardell appealed the Vice–Commandant's decision to the National Transportation Safety Board. The NTSB affirmed the decision of the Vice–Commandant that the presumption of negligence had n)t been rebutted, and held that the severity of the sanction was appropriate.

## ANALYSIS

### The Presumption

■ When a moving ship collides with a stationary object, it is presumed that the moving ship is at fault. *The Louisiana,* 70 (3 Wall.) U.S. 164, 173, 18 L.Ed. 85 (1866); *The Oregon,* 158 U.S. 186, 192–93, 15 S.Ct. 804, 806–07, 39 L.Ed. 943 (1895); *Sehlmeyer v. Romeo Co.,* 117 F.2d 996, 997 (9th Cir.1941). This presumption operates to shift the burden of persuasion onto the moving ship. *Delta Transload, Inc. v. MV Navios Commander,* 818 F.2d 445, 449 (5th Cir.1987). The presumption derives from the common-sense observation that moving vessels do not usually collide with stationary objects unless the vessel is mishandled in some way. *Id.* It stems also from the observation that "any evidence of actual negligence, or the lack of it, is likely to be known only to the persons on board, who are in the best position to either keep damaging evidence hidden, or bring favorable evidence forward." *United States v. Merchant Mariner's License No. 008075 (Joseph J. O'Connell),* Decision of the Vice–Commandant No. 2465, p. 8 (1981). The presumption is universally described as

---

**2.** 46 C.F.R. § 5.501(d) provides:
The procedures below are usually followed:

.　　.　　.　　.　　.

(5) Exclusion of witnesses from the hearing room.

"strong," *id.,* and as one that places a "heavy burden" on the moving ship to overcome. *Carr v. Hermosa Amusement Corp., Ltd.,* 137 F.2d 983, 987 (9th Cir. 1943), *cert. denied,* 321 U.S. 764, 64 S.Ct. 520, 88 L.Ed. 1060 (1944).

■ This presumption of negligence may be rebutted by showing, by a preponderance of the evidence, either that the collision was the fault of the stationary object, that the moving vessel acted with reasonable care, or that the collision was an unavoidable accident. *Bunge Corp. v. M/V Furness Bridge,* 558 F.2d 790, 795 (5th Cir.1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 518 (1978). This presumption operates not just against the ship, but against all parties who participated in the management of the vessel. *Woods v. Department of Transp.,* 681 F.2d 988, 990 (5th Cir.1982).

■ Captain Wardell erroneously argues that this presumption cannot be relied upon once the Coast Guard presents any evidence of actual negligence. The authority he cites, *S.C. Loveland, Inc. v. East West Towing, Inc.,* 608 F.2d 160, 165 (5th Cir. 1979), is distinguishable as the vessel involved struck a bridge. The court in *S.C. Loveland* cited *Pennsylvania R.R. v. S.S. Marie Leonhardt,* 202 F.Supp. 368, 376 (E.D.Pa.1962), *aff'd* 320 F.2d 262 (3d Cir. 1963), for the proposition that bridges are obstructions to navigation; and since a right of navigation is paramount, land traffic is subservient. Thus, any presumption of negligence created when a moving vessel strikes a *bridge* disappears when conflicting evidence is presented. *S.C. Loveland,* 608 F.2d at 165. Here, the S.S. GREATLAND struck a dock, not a bridge. It does not follow that the treatment of presumptions for collisions with bridges, which have been traditionally identified as obstructions to navigation, would be applicable to cases involving collisions with docks, which have not been so categorized.

■ This court has previously addressed the presumption of negligence in a situation where parties introduced conflicting evidence on the cause of the collision. In

*Pacific Tow Boat Co. v. State Marine Corp. of Delaware,* 276 F.2d 745 (9th Cir. 1960), this court held that a party did not overcome the presumption of negligence merely by introducing evidence to the contrary. As the Fifth Circuit has held, "[t]he party against whom the presumption operates bears the burden of disproving it, not merely coming forward with countervailing evidence." *Delta Transload, Inc.,* 818 F.2d at 449. The ALJ was correct in concluding that the presumption of negligence was applicable and that Captain Wardell had the burden of proving that he was not negligent.

### The NTSB's Decision

■ Orders of the NTSB are reviewable, pursuant to 5 U.S.C. § 706(2), and may be overturned only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A); *see also Ferguson v. NTSB,* 678 F.2d 821, 825 (9th Cir.1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *ASARCO, Inc. v. OSHA,* 746 F.2d 483, 490 (9th Cir.1984). The substantial evidence rule allows rejection of administrative findings only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion. *City of Oakland v. Donovan,* 703 F.2d 1104, 1106 (9th Cir. 1983), *clarified* 707 F.2d 1013 (9th Cir. 1983)(quoting *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

The NTSB decision held that Captain Wardell had not introduced any evidence which could, as a matter of law, rebut the presumption of negligence operating against him. Captain Wardell contended that the unforeseen, adverse current provides a non-fault explanation for the allision that, within the meaning of *Commandant v. Jahn,* NTSB Order EM–88 (1981), rebutted the presumption of negligence. In *Jahn* the NTSB held that the appellant had negated the presumption of negligence by producing evidence "that the presumptively blameworthy occurrence *could* have

resulted from factors other than his alleged negligence operation." *Id.* at 2. In the instant case, the NTSB distinguished *Jahn* since "a flood current acting on appellant's vessel [which] kept it from turning as rapidly or as sharply as necessary would not, without more, exonerate him from responsibility for the ensuing allision." *Wardell,* NTSB Order EM–149, at 6. As the NTSB opinion stated:

> Wholly apart from a pilot's presumed knowledge of, and ability to handle, currents within his areas of expertise, a vessel's proper management invariably and continuously involves informed judgments respecting the impact of currents on effective navigation. Consequently, the fact that a current may have precluded the successful completion of a turn does not, in itself, provide any basis for assessing, much less for excusing the possibly deficient, performance of the vessel's pilot. We think, rather, that in order for a pilot to overcome the presumption of negligent performance that his vessel's allision with a fixed object has created, the seaman must, where he attributes the allision to unmanageable currents "embarrassing" his navigation, show not only that the vessel due to the effect of the current could not have been navigated so as to avoid the allision once the turn was begun, but also that the effect of the current could not have been foreseen and compensated for through the exercise of prudent seamanship before the turn was initiated.

*Wardell* at 6.

We agree with the NTSB's decision that Captain Wardell had ample opportunity to introduce evidence at the administrative hearing to show that he was not at fault, and that he failed to make such a showing. Pilots of vessels operating within their area of expertise are held to a very high standard when an allision occurs. There is a strong presumption of fault. The record reveals that Captain Wardell did not meet this burden.

Because we agree with the NTSB that Captain Wardell did not rebut the presumption of negligence, his claims regarding due process violation must fail. Captain Wardell contends that his due process right to a fair trial was violated because the ALJ allowed Lt. Klimas to testify as an expert and because the ALJ violated the rule of exclusion which in generally followed in such hearings. We note that the Vice–Commandant's decision, as well as the NTSB's decision, commendably recognized that such procedure was improper. However, Captain Wardell was not prejudiced by these errors as he was given every opportunity to introduce exculpatory evidence. Since he failed to carry this burden, and since we do not find his punishment to be ex`essive, the decision of the NTSB is

AFFIRMED.