CARAVEL/WOODWIND CHARTERS, INC., a corporation; and St. Paul Fire & Marine Insurance Co., a corporation, Plaintiffs,

v.

TAHOE KEYS MARINA, LLC dba Tahoe Keys Marina, a California limited liability company; Ray Carreau, an individual; Richard Horton, an individual; Tahoe Keys Property Owners' Association, a corporation; and Tahoe Keys Beach and Harbor Association, Inc., a corporation, Defendants.

No. CIV. S–05–1435 LKK/KJM.

United States District Court, E.D. California.

June 30, 2006.

Joshua E. Kirsch, Gibson Robb and Lindh LLP, San Francisco, CA, for Plaintiffs.

Mark Daniel Holmes, McKasson, Klein, Holmes, Costa Mesa, CA, for Defendants and Cross Claimant.

Katherine Bellotti Porter, Anthony S. Warburg, Porter Scott Weiberg & Delehant, Sacramento, CA, for Cross Claimant.

Thomas Scott Brooke, Brooke Shaw Zumpft, Minden, NV, for Cross Defendant.

## ORDER

KARLTON, Senior District Judge.

Pending before the court is a motion for summary judgment or, in the alternative, partial summary judgment by defendant Tahoe Keys Marina, LLC ("defendant"). Plaintiff, Caravel/Woodwind Charters, Inc. ("plaintiff") filed a complaint against defendant for damages to its boat, *The Safari Rose*, arising out of an incident on Lake

Tahoe in which *The Safari Rose* hit a submerged concrete slab in a channel owned and maintained by defendant. Plaintiff alleges two causes of action, negligence and breach of an oral contract. Defendant moves for summary judgment on both causes of action.

## I.

## FACTS[1]

### A. THE CHANNEL

Tahoe Keys Marina, LLC ("defendant") controls and manages a sheltered marina on Lake Tahoe used for the berthing of boats. Def.'s SUF 1–2. A channel, 80 feet wide and 650 feet long, connects the marina to the rest of Lake Tahoe. Def.'s SUF 7, 9–10. At the center of the channel, the depth is at least eight feet. Def.'s SUF 11.

The depth at the sides of the channel, near the retaining walls, is disputed. Defendant claims it to be four to five feet and plaintiff claims it to be six to eight inches. Def.'s SUF 12; Buttling Dep. at 20:24–21:1. The parties also dispute how clear the water was at the sides of the channel. Defendant claims the water at the sides is lighter in color than in the center of the channel and that the sandy bottom floor was "clearly visible" to boats passing through the channel. Def.'s SUF 15, 18–19. Plaintiff alleges that the bottom was not "clearly visible" due to poor clarity and the growth of mill foil at the bottom of the lake. Marion Dec. at ¶ 8.

### B. THE CONCRETE CAP

Extending out of the east retaining wall on the side of the channel was a completely submerged slab of concrete left over from a conduit for utility lines. Def.'s SUF 20–21.

The parties dispute the size of this concrete cap.[2] Defendant claims that the cap extended no less than five feet and no more than fourteen feet from the retaining wall into the channel. Def.'s SUF 26. Plaintiff maintains that the cap extended at least sixteen feet into the channel. Buttling Dep. at 110:18–111:19. The parties also dispute whether the cap was visible to boats traveling in the channel. Defendant claims it was clearly visible to people above the water. Def.'s SUF 27. Plaintiff argues it was not visible for the same reasons that the bottom of the floor was not visible on the sides of the channel. Marion Dec. at ¶ 8.

### C. *THE SAFARI ROSE* AND THE INCIDENT

Caravel/Woodwind Charters ("plaintiff") is a passenger cruise business that operates on Lake Tahoe. One of the vessels owned and operated by plaintiff is *The Safari Rose,* which was housed at a berth rented from defendant. Dunham Dec. at ¶¶ 2–4; Def's. SUF 88. Plaintiff asserts that defendant represented that the channel had a depth of nine feet across the entire channel, while defendant disputes ever making such a representation. Dunham Dec. at ¶ 4; Def's. SUF 90. Neither party disputes that plaintiff's other boats had navigated across the channel without incident in the past, that plaintiff corporation's president thought it was "common knowledge" that channels were shallower on the sides than in the middle and that he knew that not all parts of the channel were nine feet. Def's. SUF 42, 47, 91.

On July 17, 2003, *The Safari Rose* embarked from the Marina. Def's. SUF 64. David Marion ("Marion") was the captain

---

1. All facts are undisputed unless otherwise noted.

2. The cap is no longer in the channel, as it was removed after the incident in question. Buttling Dep. at 96:11–24.

and Karen File was the main deck hand, entrusted to look out for obstructions in the vessel's path. Def's. SUF 66–68.[3] Marion testified that he knew it was safer to navigate in the center of the channel than on the sides. Def's. SUF 57–58. As Marion was navigating *The Safari Rose* out of the channel and onto the lake, he steered the vessel to the right to avoid a sailboat coming into the channel. Def.'s SUF 71–72.

What happened next is disputed. Plaintiff alleges *The Safari Rose* then hit the submerged cap, forcing the stabilizers attached to the bottom of the ship up through the hull of the ship, causing water to flood the vessel. Def.'s SUF 75–76. Defendant contends that Marion negligently steered *The Safari Rose* too close to the retaining wall and dragged the ship almost eighty feet across the bottom of the channel before hitting the cap. Def.'s SUF 78.

The parties dispute whether Marion admitted to knowing about the cap and simply forgot about it on the day of the accident. Defendant claims that the day after the incident, Marion approached Steve Buttling, a manager of the Marina who had known Marion for some time, and admitted that he knew "it" was there and that the incident was his fault. Buttling Dec. at ¶ 17; Buttling Dep. at 86:16. Marion disputes having made this comment. Marion Dec. at ¶ 15. Plaintiff also contends that Marion's alleged testimony to Buttling about hitting "it" is ambiguous and that Buttling himself admitted that he was not sure whether Marion was referring to the cap or the retaining wall. Buttling Dep. at 87:20–23.

## II.

## STANDARDS

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Limited v. Cetus Corp.,* 51 F.3d 848, 853 (9th Cir.1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322, 106 S.Ct. 2548. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immateri-

---

**3.** It is unclear where File was during the incident. Marion testified that he could not recall where she was. Def.'s SUF 70. Plaintiff explains that File was scheduled to be

deposed on June 16, 2006 but the court has no knowledge as to whether she was deposed or her testimony regarding her location during the incident if she was in fact deposed.

al." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Limited,* 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 586 n. 11, 106 S.Ct. 1348; *See also First Nat'l Bank,* 391 U.S. at 289, 88 S.Ct. 1575; *Rand v. Rowland,* 154 F.3d 952, 954 (9th Cir.1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers,* 971 F.2d 347, 355 (9th Cir.1992) (quoting *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505; *see also Cline v. Industrial Maintenance Engineering & Contracting Co.,* 200 F.3d 1223, 1228 (9th Cir.1999).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank,* 391 U.S. at 290, 88 S.Ct. 1575; *See also T.W. Elec. Serv.,* 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments); *see also International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *See also In re Citric Acid Litigation,* 191 F.3d 1090, 1093 (9th Cir.1999). The evidence of the opposing party is to be believed, *see Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) *(per curiam))*; *See also Headwaters Forest Defense v. County of Humboldt,* 211 F.3d 1121, 1132 (9th Cir.2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

## III.

## ANALYSIS

■ Plaintiff alleges two causes of action, negligence and breach of oral contract. Defendant moves for summary judgment as to both claims.[4] For the reasons explained herein, the court denies defendant's motion for summary judgment.

## A. DUTY & BREACH

■ It is well established that defendant, as wharfinger,[5] had a duty of care towards plaintiff. "Although a wharfinger does not guarantee the safety of vessels coming to his wharves, he is bound to exercise reasonable diligence in ascertaining the condition of the berths thereat, and if there is any dangerous obstruction to remove it, or to give due notice of its existence to vessels about to use the berths.'" *Smith v. Burnett,* 173 U.S. 430, 433, 19 S.Ct. 442, 43 L.Ed. 756 (1899). That said, in this circuit the "general concept of a formal notice which seemed to originate in *Smith v. Burnett* ... is not applied where the alleged construction or condition is open and obvious to those in charge of the vessel's management."

*Grace Line, Inc. v. Todd Shipyards Corp.,* 500 F.2d 361, 365 (9th Cir.1974)(citing *General Construction Co. v. Isthmian Lines, Inc.,* 259 F.Supp. 336, 338–339 (D.Or.1966)).

■ The parties dispute the extent to which the cement cap was open and obvious to those in charge of the vessel's management. Defendant claims that Marion should have known of the cap because the water was clear, and the bottom of the channel, as well as the cap itself, were "clearly visible" to people above the water line. *See* Def.'s Mot. for Summ. J., at 10; Def.'s SUF 15, 18–19, 27. Defendant also points out that Marion had navigated the channel without incident on several prior occasions, Def.'s SUF 51–52, and that Marion, as well as the owner of the vessel, Dunham, knew that not all portions of the channel were exactly nine feet in depth, Def.'s SUF 57, 91–92. Defendant also maintains that even if the water were not clear, the vessel "could have easily picked up the shallower depths found at the sides of the Channels, or the Cap, on its fathometer." Def.'s Mot. for Summ. J. at 12.

Finally, defendant avers that Marion confessed that he knew the cap was there at the time of the allision.

Plaintiff maintains that the cap was not easily visible. Specifically, plaintiff avers that "the depth of the water at the sides of the channel and the cement was not clearly visible at the time of the accident." Pl.'s Response to Def.'s SUF 27 (citing Dunham Decl. ¶ 12). Plaintiff claims that defendant had told plaintiff that the channel was nine

---

**4.** Although defendant moves on the breach of contract claim, defendant fails to brief the contract claim. In fact, neither party briefs the issue, or points to where in the record there is evidence of a contract, much less a breach of contract. The court will not resolve an issue in a motion for summary judgment that has not been briefed by either party. In this respect, defendant has failed to meet its

duty of demonstrating that there exists no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. For this reason, the court denies defendant's motion with respect to the contract claim.

**5.** A "wharfinger" is the "owner and occupier of a wharf." *Black's Law Dictionary,* 6th Ed.1990.

feet deep throughout. See Dunham Dec. at ¶ 4.

As noted above, plaintiff also contests Marion's alleged confession. Marion denies that he made such a confession. Marion Dec. at ¶ 15.

The parties clearly dispute whether the cap was open and obvious to the management of *The Safari Rose* and, for reasons explained herein, this factual dispute precludes summary judgment.

The inquiry as to whether the cap was a condition that was open and obvious focuses on the knowledge of the management of the vessel, and not a hypothetical person. The Ninth Circuit has explicitly explained that the question is whether the condition was open and obvious *to those in charge of the vessel's management.* *Grace Line,* 500 F.2d at 365. (emphasis added). In discussing the open and obvious standard, the *Grace* court explains that "[r]egardless of whether the [plaintiff] should have been aware of the danger, [defendant] had a duty to remove it or to give notice *unless the [plaintiff] was actually aware of it."* *Id.* In the case at bar, defendant fails to meet its Rule 56(c) burden. Defendant cannot demonstrate the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As discussed, the parties vigorously contest whether or not the cap was so open and obvious that Marion actually knew of the cap at the time of the accident. This dispute is a question of fact which must be left to a trier of fact. Therefore, summary judgment is inappropriate and must be denied.

If a trier of fact determines that the cap was actually open and obvious to Marion at the time of the incident, then defendant's duty would be discharged and the inquiry would end. If, however, a trier of fact were to find that the cap was not open and obvious and that defendant breached its duty owed to plaintiff, the trier of fact would need to make a finding as to causation and determine whether defendant's breach was a proximate cause of the accident.

## B. CAUSATION

■ In order to establish that defendant was negligent, there must be a causal connection between the alleged breach of duty and the resulting injury.

■ Two maritime law presumptions are relevant in determining whether defendant's alleged breach proximately caused the accident. Under *The Pennsylvania* rule, a ship that violates a statutory rule intended to prevent collisions is presumed to be the contributing, if not the sole, cause of the incident. *The Pennsylvania,* 19 Wall. 125, 86 U.S. 125, 136, 22 L.Ed. 148 (1873), *overruled on other grounds by United States v. Reliable Transfer Co.,* 421 U.S. 397, 411, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *Trinidad Corp. v. S.S. Keiyoh Maru,* 845 F.2d 818, 824 (9th Cir. 1988)(The *Pennsylvania* rule applies in Ninth Circuit).

*The Oregon* presumption holds that when a vessel collides with a stationary object, the vessel is presumed to be at fault. *The Oregon,* 158 U.S. 186, 192–193, 15 S.Ct. 804, 39 L.Ed. 943 (1895); *Wardell v. Department of Transp., Nat'l Transp. Safety Bd.,* 884 F.2d 510, 512 (9th Cir. 1989).

A finding that one or both of these presumptions applies to the facts in this case shifts the burdens of production and proof to the vessel to prove it was not the proximate cause of the allision. *The Pennsylvania,* 86 U.S. at 136, 86 U.S. 125. ("burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that could not have been"); *Carr v. Hermosa Amusement Corp.,* 137 F.2d 983, 985 (9th Cir.1943) *(Oregon* pre-

sumption "places a 'burden of proof' on the moving vessel").

■ The court notes further that comparative negligence is the basis for apportionment of fault and causation in admiralty cases. *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 44 L.Ed.2d 251 ("[I]n a maritime collision ... liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault"). Thus, even if defendant's negligence is established, the question of comparative negligence remains. For the reasons discussed herein, the court concludes that disputed facts concerning causation prevents the court from entering summary judgment for defendant.

### 1. *The Pennsylvania Rule*

■ If defendant establishes that plaintiff violated any statutory rule, *The Pennsylvania* presumption shifts the burden of proof to plaintiff to prove that "the violation could not reasonably be held to have been a proximate cause of the collision." *Trinidad Corp.*, 845 F.2d at 824 (quoting *States S.S. Co. v. Permanente S.S. Corp.*, 231 F.2d 82, 87 (9th Cir.1956)). To rebut the presumption, plaintiff must prove not merely that its "fault might not have been one of the causes of the collision but that it could not have been one of the causes." *Trinidad Corp.*, 845 F.2d at 824.

Defendant maintains that *The Safari Rose* violated three Inland Rules of Navigation and therefore, under *The Pennsylvania* Rule, plaintiff's actions are presumed to be a proximate cause of the allision.[6] Def.'s Mot. For Summ. J. at 22.

I address each of the alleged violations in turn.

### a. *Lookout Rule*

■■ Defendant claims that *The Safari Rose* was in violation of the Lookout Rule by failing to maintain a proper lookout on the boat to warn of possible collisions.[7] Failing to post a lookout in violation of 33 U.S.C. § 2005 is a violation of a statutory duty and therefore, raises a presumption of negligence under The *Pennsylvania* rule. *Trinidad*, 845 F.2d at 826.

Defendant, as the moving party, fails to tender evidence that establishes that *The Safari Rose* violated the Lookout Rule. The parties agree that Karen File was the only other crew member on board with Marion and that one of her duties was to look out for obstructions, and that she did not bring any obstruction to Marion's attention. The parties also agree that Marion cannot say for sure where File was located on the boat prior to the incident. Def.'s SUF 67–69.

That said, defendant has failed to establish that File was not, in fact, present at the front of the boat. The only evidence regarding File's location is Marion's testimony that he could not remember where she was on the vessel prior to the allision. Def.'s SUF 70. This testimony does not preclude the possibility that File was in fact, located in lookout position at the bow of the boat. In short, the testimony is silent as to File's actual location. Without more, the court cannot conclude that plaintiff was in violation of the Lookout Rule.

In addition, the parties dispute the visibility and clarity of the water at the time

---

6. The Inland Rules of Navigation, 33 U.S.C. §§ 2001 et *seq.*, are navigation rules that "apply to all vessels upon the inland waters of the United States."

7. 33 U.S.C. § 2005 states "[e]very vessel shall at all times maintain a proper look-out by

sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision."

of the incident. *See* Def.'s SUF 15, 18–19, 27; Marion Dec. at ¶ 8. This dispute is material as it goes to rebutting the presumption that the violation was a cause of the allision. If a trier of fact determined that plaintiff did in fact fail to maintain a lookout, thus triggering *The Pennsylvania* rule, there remains a dispute as to whether the lack of a lookout was a cause of the allision or, if the allision would have occurred anyway because the cap was not visible. In sum, the court finds that the dispute regarding File's actual location, and the dispute regarding the clarity of the water at the time of the allision precludes summary judgment as to the Lookout Rule.

### b. *Prudent Mariner Rule*

■ Defendant avers that Marion violated the Prudent Mariner Rule by failing to use the fathometer while navigating *The Safari Rose* through the channel.[8] Def.'s SUF 82; Def.'s Mot. For Summ. J. at 23.

■ The Prudent Mariner Rule establishes a general duty on all mariners to use prudent seamanship and provides that no mariners are exonerated from adhering to either the specific Inland Rules of Navigation or the ordinary practice of prudent seamen, except when necessary to avoid immediate danger.[9]

Defendant points to no specific statutory duty to use and maintain a fathometer capable of measuring depth. Thus, whether Marion violated the Prudent Mariner Rule depends on whether it is "ordinary practice of a prudent seaman" to utilize a fathometer. Defendant fails to tender any evidence as to what constitutes ordinary practice with respect to a fathometer. Moreover, the parties dispute the extent to which Marion utilized the fathometer during or immediately before the incident. Def.'s SUF 57–58, 60.

Even if the court concluded that plaintiff violated the Prudent Mariner Rule, there remains a dispute as to whether the violation was actually a cause of allision. As discussed, if plaintiff can establish that the violation was not a cause of the allision, then plaintiff effectivity rebuts *The Pennsylvania* presumption. Here, plaintiff alleges that even if Marion violated the Prudent Mariner Rule by failing to use the fathometer, the allision was inevitable and was not caused by Marion's failure to use the fathometer. See Sharpe Dec. at ¶ 10; Def.'s SUF 82.

It is evident that material factual disputes remain regarding the prudent mariner rule and whether a violation of that rule was a proximate cause of the allision. For this reason, summary judgment must be denied on these grounds.

### c. *Narrow Channel Rule*

■ Defendant maintains that Marion violated the Narrow Channel Rule by straying away from the center of the channel to let the sailboat pass.[10] Def.'s SUF

---

**8.** 33 U.S.C. § 2002(a) states "[ n] othing in these Rules [ 33 USCS §§ 2001 et seq.] shall exonerate any vessel, or the owner, master, or crew thereof, from the consequences of any neglect to comply with these Rules [ 33 USCS §§ 2001 et seq.] or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."

**9.** *See* 33 U.S.C. § 2002(b) which reads "[i]n construing and complying with these Rules due regard shall be had to all dangers of

navigation and collision and to any special circumstances, including the limitations of the vessels involved, which may make a departure from these Rules necessary to avoid immediate danger."

**10.** 33 U.S.C. § 2009 states in pertinent part "(a)(I) A vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable ... (b) A vessel of less than 20 meters in length or a sailing vessel

81; Def.'s Mot. For Summ. J. at 24. Plaintiff asserts that Marion did not violate the Narrow Channel Rule by steering to the right to avoid the sailboat, as he effected a proper passing and kept as near to the outer limit of the channel as was safe and practicable given the size of the cap. Sharpe Dec. at ¶ 8.

Again, this dispute precludes summary judgment. Whether Marion navigated "as near to the outer limit of the channel ... as is safe and practicable" as required by § 2009(a)(I), depends on the size of the cap, whether he knew of the cap's location and whether he could see the cap. *See* Def.'s SUF 26–27; Buttling Dep. at 96:11–24, 110:18–111:19; Marion Dec. at ¶ 8. As discussed, whether Marion was actually aware of the cap is disputed.

### 2. *The Oregon Rule*

 When a vessel hits a stationary object, *The Oregon* rule places the burden on the vessel to prove by a preponderance of the evidence that the vessel was without fault or that the allision was occasioned by the fault of stationary object or that it was the result of an inevitable accident. *Carr v. Hermosa Amusement Corp.*, 137 F.2d 983, 985 (9th Cir.1943); *Wardell*, 884 F.2d at 513 (plaintiff has burden to demonstrate that "either that the collision was the fault of the stationary object, that the moving vessel acted with reasonable care, or that the collision was an unavoidable accident"). "Ultimately, the presumption derives from the common-sense observation that moving vessels do not usually collide with stationary objects unless the vessel is mishandled in some way." *American Petrofina Pipeline Co. v. M/V Shoko Maru*, 837 F.2d 1324, 1326 (5th Cir.1988).

That said, some courts have held that *The Oregon* rule does not apply in the case

of an allision with a submerged hidden object. *Delta Transload, Inc. v. Motor Vessel "Navios Commander"*, 818 F.2d 445, 450 (5th Cir.1987)(the presumption does not apply to allisions with sunken or hidden objects); *Pelican Marine Carriers, Inc. v. City of Tampa*, 791 F.Supp. 845, 852 (M.D.Fla.1992) (same). Therefore, as the Fifth Circuit explained, "the party who is invoking the presumption has the burden of proving either that the object was visible or that the vessel otherwise possessed knowledge of the object's location." *Id.*

Defendant maintains that *The Safari Rose* is presumptively negligent under *The Oregon* rule. Def.'s Mot. for Summ. J. at 21. Defendant submits that it is undisputed that the cap was a stationary object and that *The Safari Rose* hit the cap, causing the damage. Def.'s SUF 20, 75–76. Plaintiff argues, however, that since the cap was completely submerged and hidden, defendant is at fault for the allision. Pl.'s Opp. to Mot. For Summ. J. at 7.

 The court adopts the reasoning of the Fifth Circuit in concluding that *The Oregon* Rule does not apply to hidden submerged objects. This makes sense as it is difficult to comprehend how a vessel could be presumptively liable for an object that, by its nature of being hidden, was unknown to the vessel. Since the parties dispute the hidden nature of the cap, however, the court cannot conclude as a matter of law that *The Oregon* rule does not apply.

 If a trier of fact determined that the cap was visible, *The Oregon* presumption applies and plaintiff has the burden to prove that the vessel was without fault, that the collision was occasioned by the

shall not impede the passage of a vessel that can safely navigate only within a narrow

channel or fairway."

fault of stationary object or that it was the result of an inevitable accident. *Carr v. Hermosa Amusement Corp.*, 137 F.2d 983, 985 (9th Cir.1943). There are several factual disputes that preclude the court from determining whether or not plaintiff can prove the absence of fault.

First, whether the stationary concrete cap was the cause of the allision depends on whether it was open and obvious. If the cap was open and obvious, the cause of the allision may be solely attributable to the negligence of Marion. If the cap was not open and obvious, then the accident could be attributed to the cap, and defendants' failure to warn, provided that a reasonable and prudent person would not have known about the cap. As explained previously, the open and obvious nature of the cap is disputed.

Second, the parties contest whether or not the vessel acted with reasonable care. In *Grace*, the Ninth Circuit explained that *actual* awareness of the hazard was "required to obviate [defendant's] duty to remove the hazard or give notice of it; [and] granting [defendant] had a duty in the absence of actual notice, the vessel also may have been negligent if it should have had awareness" of the dangerous condition. *Grace Lines*, 500 F.2d at 366. In other words, plaintiff may be presumptively at fault if plaintiff should have known of the cap's location. Like with the question of plaintiff's actual awareness, a trier of fact must determine whether plaintiff should have been aware of the cap.

 Finally, it is disputed whether the accident was unavoidable. An "unavoidable accident" will only be found if the collision could not have been prevented by "human skill and precaution, and a proper display of nautical skill." *In re SEASPAN QUEEN*, 172 F.Supp.2d 1314, 1321 (E.D.Wash.2001) (citations omitted) (quoting *The Louisiana*, 3 Wall. 164, 70 U.S. 164, 173, 18 L.Ed. 85 (1865)); *see also*

*Weyerhaeuser Co. v. Atropos Island*, 777 F.2d 1344, 1347 (9th Cir.1985).

The question of whether Marion could have used skill to avoided hitting the cap is clearly disputed. Again, as discussed earlier, this inquiry hinges on whether the cap was visible and obvious, the size of the cap, the location of Karen File, and Marion's prior knowledge of the cap.

### 3. *Comparative Negligence*

 Even if defendant is found to be negligent, the issue of liability remains. In *Reliable Transfer Co.*, the Supreme Court adopted "pure" comparative fault as the basis of apportionment in admiralty cases. 421 U.S. at 411, 95 S.Ct. 1708. This abrogated the prior standard of divided damages. Under the "pure" comparative fault system, when the negligence of multiple parties contribute to the loss, the court must make a complete apportionment of damages between the negligent parties based on their respective degrees of fault. See Thomas J. Schoenbaum, *Admiralty & Maritime Law*, § 5–4 (3rd Ed.2001).

Therefore, if defendant is found to be negligent in failing to warn of the concrete cap, plaintiff's recovery can be limited if found to be comparatively negligent. Whether plaintiff contributed to the allision is, for all the reasons discussed previously, a disputed issue of fact.

For all the reasons explained above, defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.